No. 22-2960

## In the
# United States Court of Appeals for the Eighth Circuit

---

WILLIAM SALIER AND KARLA SALIER,

*Plaintiffs-Appellants*,

v.

WALMART, INC. AND HY-VEE, INC.,

*Defendants-Appellees*.

---

On Appeal from the United States District Court
for the District of Minnesota, Case No. 22-cv-0082,
Hon. Patrick J. Schiltz, *Chief District Judge*

---

## BRIEF OF APPELLEE WALMART INC.

---

KRISTIN K. ZINSMASTER
MATTHEW J. RUBENSTEIN
JONES DAY
90 South 7th Street, Suite 4950
Minneapolis, MN 55402
Tel: (612) 217-8800
kzinsmaster@jonesday.com
mrubenstein@jonesday.com

*Counsel for Appellee Walmart Inc.*

# SUMMARY OF THE CASE AND ORAL ARGUMENT STATEMENT

Appellants William and Karla Salier contracted COVID-19 in October 2021. They obtained prescriptions for ivermectin and hydroxychloroquine from an out-of-state doctor. A pharmacist at Appellee Walmart Inc. ("Walmart") refused to fill them, explaining that, in his professional judgment, they were not "appropriate to treat COVID-19 patients," were "dangerous," and "imperil[ed] the Saliers' health." After Appellee Hy-Vee, Inc. ("Hy-Vee") also refused to fill the prescriptions, the Saliers took a veterinary formulation of ivermectin. They fully recovered from COVID-19 shortly thereafter.

The District Court correctly dismissed with prejudice the Saliers' ensuing claims for violation of a putative common law "right to self-determination" and for intentional infliction of emotional distress ("IIED"). It held that no "right to self-determination" tort exists in Minnesota and that the Saliers failed to allege extreme and outrageous conduct as required to plead an IIED claim. The District Court also dismissed with prejudice because the Saliers failed to comply with Minnesota's requirement, for claims such as these, that plaintiffs' counsel submit an affidavit that an expert believes the claims have merit. Each of these independent reasons for dismissal was correct; this Court should affirm.

Walmart believes this case can be affirmed without argument. If the Court believes argument would be useful, Walmart agrees 10 minutes per side is proper.

Appellate Case: 22-2960    Page: 2    Date Filed: 02/08/2023 Entry ID: 5243868

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Rule 26.1A, Walmart Inc. states that it does not have a parent corporation and that no publicly held corporation owns 10% or more of its stock.

Appellate Case: 22-2960    Page: 3    Date Filed: 02/08/2023 Entry ID: 5243868

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE AND ORAL ARGUMENT STATEMENT ..............i

CORPORATE DISCLOSURE STATEMENT ....................................... ii

TABLE OF AUTHORITIES ...................................................................iv

COUNTERSTATEMENT OF THE ISSUES.........................................1

STATEMENT OF THE CASE................................................................2

    A.   The Saliers' Claims ...............................................................2

    B.   Walmart Moves to Dismiss and the Saliers Fail to Secure an Affidavit of Expert Review as Required by Minnesota Law...................3

    C.   The District Court Dismisses the Saliers' Claims with Prejudice Both on the Merits and Based on the Failure to Provide the Required Affidavit .................................................................6

SUMMARY OF ARGUMENT .............................................................9

STANDARDS OF REVIEW ...............................................................11

ARGUMENT ......................................................................................12

I.    THE DISTRICT COURT CORRECTLY DISMISSED THE SALIERS' CLAIMS ON THE MERITS ...........................................12

    A.   The Saliers' Purported "Self-Determination" Claim Rests on a Tort that Does Not Exist .......................................12

    B.   The Saliers Fail to Allege Extreme and Outrageous Conduct and Severe Emotional Distress as Required to Plead a Viable IIED Claim.........................................17

        1.   The District Court Correctly Held That the Saliers Failed to Plausibly Plead Extreme and Outrageous Conduct....................18

        2.   The Saliers Also Failed to Plausibly Allege Severe Emotional Distress...............................................23

II.   THE DISTRICT COURT ALSO CORRECTLY DISMISSED THE SALIERS' CASE FOR FAILING TO COMPLY WITH MINNESOTA'S REQUIREMENT OF AN AFFIDAVIT OF EXPERT REVIEW ............................................................25

CONCLUSION ...................................................................................31

Appellate Case: 22-2960    Page: 4    Date Filed: 02/08/2023 Entry ID: 5243868

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Albert v. Indep. Sch. Dist. No. 709*,
No. A12-1516, 2013 WL 1500986 (Minn. Ct. App. Apr. 15, 2013) ................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................11

*Ashley Cnty. v. Pfizer, Inc.*,
552 F.3d 659 (8th Cir. 2009) ............................................................11, 12, 15

*Besett v. Wadena Cnty.*,
No. 10-cv-934, 2010 WL 5439720 (D. Minn. Dec. 7, 2010) ............................24

*Bohdan v. Alltool Mfg., Co.*,
411 N.W.2d 902 (Minn. Ct. App. 1987)........................................................17

*Brown-Wilbert, Inc. v. Copeland Buhl & Co.*,
732 N.W.2d 209 (Minn. 2007) ....................................................................26

*C.C. v. Fairview Health Servs.*,
No. A09-2320, 2010 WL 3000603 (Minn. Ct. App. Aug. 3, 2010)..............1, 26

*City of Ashdown v. Netflix, Inc.*,
52 F.4th 1025 (8th Cir. 2022) ......................................................................11

*Cornfeldt v. Tongen*,
262 N.W.2d 684 (Minn. 1977) ..............................................................*passim*

*Edison v. Nat'l R.R. Passenger Corp.*,
No. 20-cv-614, 2021 WL 2515516 (D. Minn. June 18, 2021)................1, 18, 24

*Elkharwily v. Mayo Holding Co.*,
955 F. Supp. 2d 988 (D. Minn. 2013)...........................................................19

*Elstrom v. Indep. Sch. Dist. No. 270*,
533 N.W.2d 51 (Minn. Ct. App. 1995)..........................................................24

*Godfrey v. State Farm Fire & Cas. Co.*,
11 F.4th 601 (8th Cir. 2021) ........................................................................12

*Haile v. Sutherland*,
598 N.W.2d 424 (Minn. Ct. App. 1999)....................................................1, 26

*Henning v. Mainstreet Bank*,
538 F.3d 975 (8th Cir. 2008) .......................................................................29

Appellate Case: 22-2960   Page: 5   Date Filed: 02/08/2023 Entry ID: 5243868

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Hubbard v. United Press Int'l, Inc.*,
330 N.W.2d 428 (Minn. 1983) .................................................................*passim*

*Johnson v. John Deere Co.*,
935 F.2d 151 (8th Cir. 1991) ..............................................................16

*Judah v. Ovsak*,
550 F. Supp. 3d 687 (D. Minn. 2021) ..................................................26

*K.A.C. v. Benson*,
527 N.W.2d 553 (Minn. 1995) .........................................................1, 21

*Kingman v. Dillard's, Inc.*,
643 F.3d 607 (8th Cir. 2011) ..............................................................12

*Langeslag v. KYMN Inc.*,
664 N.W.2d 860 (Minn. 2003) .............................................1, 18, 22, 23

*Madsen v. Park Nicollet Med. Ctr.*,
431 N.W.2d 855 (Minn. 1988) ...........................................................1, 14

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
911 F.3d 505 (8th Cir. 2018) ..........................................................12, 15

*Paulos v. Johnson*,
597 N.W.2d 316 (Minn. Ct. App. 1999) ...............................................26

*PFS Distrib. Co. v. Raduechel*,
574 F.3d 580 (8th Cir. 2009) ..............................................................25

*Phillips v. Fairview Health Servs.*,
No. 10-cv-4442, 2011 WL 6151514 (D. Minn. Dec. 12, 2011) .....................1, 27

*R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist. No. 2149*,
894 F. Supp. 2d 1128 (D. Minn. 2012) ................................................19

*Roth v. Life Time Fitness, Inc.*,
No. 16-cv-2476, 2017 WL 1628877 (D. Minn. May 1, 2017) ..........................16

*Sarkisian v. Rooke*,
No. 06-cv-170, 2007 WL 9811040 (E.D. Pa. Mar. 23, 2007) ...........................21

*Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake*,
771 F.2d 1153 (8th Cir. 1985) ............................................................16

Appellate Case: 22-2960     Page: 6     Date Filed: 02/08/2023 Entry ID: 5243868

**Page(s)**

*Smith v. SEECO, Inc.*,
    922 F.3d 406 (8th Cir. 2019) .............................................................16

*Stead-Bowers v. Langley*,
    636 N.W.2d 334 (Minn. Ct. App. 2001) ............................................23

*Strauss v. Thorne*,
    490 N.W.2d 908 (Minn. Ct. App. 1992) ............................................18

*Stroud v. Hennepin Cnty. Med. Ctr.*,
    556 N.W.2d 552 (Minn. 1996) ..........................................................25

*Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*,
    908 F.3d 313 (8th Cir. 2018) .............................................................29

*Thomas v. UnitedHealth Grp., Inc.*,
    No. 12-cv-47, 2014 WL 5307579 (D. Minn. Oct. 16, 2014)..............24

*Travelers Indem. Co. v. Dammann & Co.*,
    594 F.3d 238 (3d Cir. 2010) ..............................................................15

*Vogel v. Turner*,
    No. 11-cv-446, 2012 WL 5381788 (D. Minn. Nov. 1, 2012) ............27

*Warmington v. Bd. of Regents of Univ. of Minn.*,
    998 F.3d 789 (8th Cir. 2021) .............................................................11

**STATUTES**

Minn. Stat. § 145.61 ...............................................................................26

Minn. Stat. § 145.682 .......................................................................*passim*

**OTHER AUTHORITIES**

Minnesota Board of Pharmacy, *Frequently Asked Questions: Complaints* ............21

Restatement (Second) of Torts § 46 (1965) ............................................23

17A Charles Alan Wright et al., Fed. Prac. & Proc. Juris. § 4248
    (3d ed. 2017 update) ..........................................................................16

Appellate Case: 22-2960    Page: 7    Date Filed: 02/08/2023 Entry ID: 5243868

# COUNTERSTATEMENT OF THE ISSUES

1.     Whether the District Court correctly held that Minnesota law does not recognize a common-law tort for violating a purported "self-determination" right to compel healthcare providers to provide specific treatment against their professional judgment.

Most Apposite Cases: *Cornfeldt v. Tongen*, 262 N.W.2d 684 (Minn. 1977); *Madsen v. Park Nicollet Med. Ctr.*, 431 N.W.2d 855 (Minn. 1988).

2.     Whether the District Court correctly held that the Saliers failed to plead viable claims for intentional infliction of emotional distress.

Most Apposite Cases: *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428 (Minn. 1983); *Langeslag v. KYMN Inc.*, 664 N.W.2d 860 (Minn. 2003); *K.A.C. v. Benson*, 527 N.W.2d 553 (Minn. 1995); *Edison v. Nat'l R.R. Passenger Corp.*, No. 20-cv-614, 2021 WL 2515516 (D. Minn. June 18, 2021).

3.     Whether the District Court correctly held that Minnesota law also independently required dismissal with prejudice because of the Saliers' failure to satisfy the requirement to submit an affidavit of expert review.

Most Apposite Authorities:  Minn. Stat. § 145.682; *C.C. v. Fairview Health Servs.*, No. A09-2320, 2010 WL 3000603 (Minn. Ct. App. Aug. 3, 2010); *Haile v. Sutherland*, 598 N.W.2d 424 (Minn. Ct. App. 1999); *Phillips v. Fairview Health Servs.*, No. 10-cv-4442, 2011 WL 6151514 (D. Minn. Dec. 12, 2011).

1

# STATEMENT OF THE CASE

## A.    The Saliers' Claims

At the pleading stage, the Saliers' factual allegations are taken as true. William Salier contracted COVID-19 in October 2021. App. 4; R. Doc. 9 at 2, ¶ 8. He first sought monoclonal antibody and ivermectin treatment at a nearby clinic. App. 5; R. Doc. 9 at 3, ¶ 12. The clinic determined that he did not meet the criteria for the limited supply of antibodies available, and the attending physician "declined to prescribe" ivermectin. *Id.* After a telehealth appointment, Mollie James, an out-of-state doctor, prescribed ivermectin. App. 5; R. Doc. 9 at 3, ¶¶ 14, 16.

Dr. James sent the prescription to a Walmart pharmacy in Albert Lea, Minnesota. When William's wife, Karla Salier, tried to fill it, the pharmacist on duty declined, explaining that ivermectin "was not appropriate to treat COVID-19 patients." App. 5; R. Doc. 9 at 3, ¶ 17. Karla Salier asked again, and the pharmacist again explained his judgment that "Ivermectin was dangerous for her husband despite his doctor's prescription." App. 5-6; R. Doc. 9 at 3-4, ¶ 18. Karla Salier also contracted COVID-19, and the pharmacist declined to fill Dr. James's prescriptions for ivermectin and hydroxychloroquine for her "for the same reasons at the same time." App. 6; R. Doc. 9 at 4, ¶ 20. Dr. James called the pharmacist, who "continued to refuse to fill the prescription and attempted to lecture Dr. James about how she was imperiling the Saliers' health." App. 6; R. Doc. 9 at 4, ¶ 19.

Appellate Case: 22-2960    Page: 9    Date Filed: 02/08/2023 Entry ID: 5243868

The Saliers then went to Hy-Vee, which likewise refused to fill the ivermectin and hydroxychloroquine prescriptions. App. 6; R. Doc. 9 at 4, ¶ 21. The Saliers allege that Hy-Vee's pharmacist told them that Hy-Vee had a "corporate policy to refuse Ivermectin and hydroxychloroquine prescriptions to treat COVID-19." *Id.*

Ultimately, the Saliers took a veterinary formulation of ivermectin. App. 6-7; R. Doc. 9 at 4-5, ¶¶ 22-23. Shortly thereafter, they claim to have experienced a "rapid and significant improvement in their conditions," with no "negative health problems." App. 7; R. Doc. 9 at 5, ¶¶ 24-27.

In January 2022, the Saliers sued Walmart and Hy-Vee for violating a purported "common law right to self determination" and for intentional infliction of emotional distress. App. 10-19; R. Doc. 9 at 8-17, ¶¶ 40-63, 74-95 (capitalization altered).[1]

## B. Walmart Moves to Dismiss and the Saliers Fail to Secure an Affidavit of Expert Review as Required by Minnesota Law

Walmart moved to dismiss on April 5, 2022. On the merits, Walmart argued that Minnesota law does not recognize a tort for violating a purported common-law right to self-determination and that the Saliers failed to adequately allege multiple essential elements of their IIED claims. *See* R. Doc. 24.

---

[1] The Saliers also sued for tortious interference with contractual relations. App. 14-15, 19-20; R. Doc. 9 at 12-13, 17-18, ¶¶ 64-73, 96-105. They have expressly waived those claims on appeal. Salier Br. 11.

Appellate Case: 22-2960   Page: 10   Date Filed: 02/08/2023 Entry ID: 5243868

Walmart noted that the Saliers' self-determination claim rested on dicta from a 1977 Minnesota Supreme Court case that recognized a tort for negligent nondisclosure of risks attendant to a proposed course of medical treatment. But neither that case nor any other source of Minnesota law—nor, for that matter, the law of any other state—has recognized a common-law "self-determination" right to *compel*, rather than decline or give informed consent to, a particular medical treatment. As to the IIED claim, Walmart explained that the Saliers could not plead the element of "extreme and outrageous conduct" that is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community," or the separate element of "severe emotional distress."

Walmart also invoked Minnesota's requirement that, in a case "alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case," the plaintiff must serve an affidavit by plaintiff's counsel "with the summons and complaint" that an expert reviewed the case and believed it was viable. Minn. Stat. § 145.682, subdivs. 1-3. Because the Saliers failed to submit an affidavit "with the summons and complaint," Walmart requested that they do so, and noted that the statute made "mandatory dismissal with prejudice" the "result[]" if it was not submitted "within 60 days after [the] demand." R. Doc. 24 at 18-21; Minn. Stat. § 145.682, subdiv. 6(a).

4

In opposing the motion to dismiss, the Saliers admitted Minnesota law has not previously recognized the self-determination tort they are asserting, but asked the District Court to certify that issue to the Minnesota Supreme Court. R. Doc. 28 at 7-8. The Saliers' counsel also "acknowledge[d]" and took "sole responsibility for[] the Saliers' failure to supply an affidavit of counsel … with their claims." *Id.* at 26. Although purporting not to concede that their claims were "pure malpractice claims," *id.*, the Saliers offered no argument for why Minnesota's requirement—which covers not only "malpractice," but also "error, mistake, or failure to cure"—would not apply. *See* Minn. Stat. § 145.682, subdiv. 2. Instead, they stated they would "secure such an affidavit … within 60 days of April 5, 2022." *Id.*

Walmart's reply continued to support its arguments for dismissal on the merits and explained why certification was unwarranted. Moreover, because the Saliers still had not submitted the required affidavit, Walmart explicitly "reserve[d] its statutory right to mandatory dismissal with prejudice" if such affidavit was not submitted within the sixty-day window as promised. R. Doc. 29 at 16.

Three weeks after that sixty-day period elapsed, Chief Judge Schiltz held a hearing on the motion to dismiss. When he noted that the Saliers had "conceded you were supposed to file this affidavit" and asked whether it had been submitted, their counsel admitted it had not and again took "responsibility" for the ongoing failure. App. 80; R. Doc. 35 at 33.

5

Counsel asserted that he had located "a physician who would be willing to sign an affidavit," but stated that he had "had incredible difficulty getting even in communication with him" and had "looked for other experts who could supply an affidavit" but had "come up empty." App. 80-82; R. Doc. 35 at 33-35. Counsel again did not contest the need for the affidavit, except for a conclusory statement that "the IIED claim … is not a purely medical malpractice action." App. 107; R. Doc. 35 at 60. Although counsel orally requested a "moderate extension of time to give my clients one last opportunity to attempt to supply that affidavit to the Court and opposing counsel," he never filed a written extension request, submitted an affidavit, or otherwise followed up on his request, which he readily admitted was "a little belated." App. 80; R. Doc. 35 at 33.

## C. The District Court Dismisses the Saliers' Claims with Prejudice Both on the Merits and Based on the Failure to Provide the Required Affidavit

On August 19, 2022, the District Court granted Walmart's motion and dismissed the case "with prejudice and on the merits." Add. 21 (capitalization altered).

As to the Saliers' claim for a violation of the purported common-law right to self-determination, the District Court observed that "not a single state"—including Minnesota—recognizes an unbounded common-law "right to force a medical provider to provide a particular type of medical treatment against his or her professional judgment." Add. 7. To the contrary, multiple courts have declined to

6

order healthcare providers to "administer a treatment they do not wish to provide," including, specifically, ivermectin. Add. 8 (collecting cases). As the District Court explained, recognizing such a "sweeping new right … would have profound implications" and "would completely upend the legal regulation of doctors, dentists, physician assistants, nurses, pharmacists, and other health-care professionals." *Id.* The Saliers' request to do so based "on a fragment of sloppy dicta in an opinion that analyzed a different issue" and that no Minnesota appellate court had ever cited did not present a "close question" that could justify certification. Add. 8-9 & n.2.

The District Court next agreed with Walmart that the Saliers' IIED claims did "not remotely approach those circumstances" in which a refusal to dispense prescriptions might constitute extreme and outrageous conduct. Add. 10. In particular, the District Court noted that "every major medical authority and government agency that had addressed the issue had said that ivermectin and hydroxychloroquine should not be used to treat COVID-19" and held that "[o]bviously, there is nothing extreme or outrageous about a pharmacist's following the advice of these authorities." Add. 10-11. Nor did anything in the Saliers' allegations "make[] plausible their claim that the reason the pharmacists at Walmart and Hy-Vee refused to fill their prescriptions was not that doing so would contravene the overwhelming weight of medical authority, but because of political beliefs or corporate policies that were unrelated to that authority." Add. 11.

7

In the alternative, the District Court held that "[e]ven if the Saliers had pleaded one or more plausible claims, the Court would be required to dismiss those claims" because of the Saliers' failure to file the required affidavit. Add. 15. The District Court noted that the Saliers had barely disputed this requirement's applicability and explained that "the statute embraces all of the Saliers' claims." Add. 17. The affidavit was required because, among other reasons, "to show causation, the Saliers would have to demonstrate that their prescriptions would have been filled but for the allegedly tortious conduct," which "would require the Saliers to show that filling their prescriptions was consistent with the standard of care." Add. 17-18.

The District Court then noted that Minnesota law permits the sixty-day window to be extended only for "excusable neglect," which requires, among other things, "a reasonable suit on the merits," "a reasonable excuse for failure to comply" with the statutory time limits, and "due diligence." Add. 19. The Saliers met none of these requirements because "they have not come close to pleading a viable claim" and because the only excuse they offered—that they had had trouble securing an affidavit from a particular doctor—was no excuse at all, because at the pleading stage, Minnesota law requires an affidavit only from *plaintiffs' counsel*, not from the expert himself or herself. Add. 19-20. So as the District Court observed, "[i]f what counsel said at the hearing [were] true, then nothing [would have] prevented him from drafting, signing, and serving the required affidavit." Add. 20.

Appellate Case: 22-2960    Page: 15    Date Filed: 02/08/2023 Entry ID: 5243868

## SUMMARY OF ARGUMENT

The District Court correctly concluded that the Saliers' claims warranted dismissal with prejudice for two reasons. Not only did they fail on the merits, but Minnesota law requires "mandatory dismissal without prejudice" as the "result[]" of failing to file the required affidavit of expert review. The Saliers cannot obtain reversal unless they can show that the District Court was mistaken on both independent grounds. The District Court erred on neither, however, so its decision must be affirmed.

To begin, the District Court properly rejected the Saliers' claims that the purported common-law right to self-determination required Walmart's pharmacist to dispense prescriptions against his professional judgment. Minnesota law imposes no such duty and recognizes no such cause of action. To argue otherwise, the Saliers rely on a single sentence of dicta from a 1977 case, *Cornfeldt v. Tongen*, that recognized the different tort of negligent nondisclosure of risks attendant to medical treatment. As the Minnesota Supreme Court later confirmed, the tort that *Cornfeldt* recognized does not include a failure to treat—the absolute most the Saliers have alleged here. Minnesota law thus forecloses these claims, and even if the question were merely an open one, there is no basis to extend liability beyond anything recognized by Minnesota's legislature or its Supreme Court. Nor is the question remotely close enough to justify certification.

9

The District Court also correctly dismissed the Saliers' IIED claims. Such claims require conduct so "extreme and outrageous" as to be "utterly intolerable to the civilized community." The alleged conduct of Walmart's pharmacist, however, was consistent with the guidance and recommendations of the Minnesota Board of Pharmacy, as well as of "every major medical authority and government agency that had addressed the issue." Add. 10. The District Court was thus correct that the Saliers could not possibly meet the IIED tort's high bar.

The IIED claims also fail on the merits for a second reason the District Court had no need to reach: the Saliers failed to adequately plead that any emotional distress they suffered was sufficiently severe. Their Amended Complaint does not include so much as a conclusory allegation of any physical manifestation or interference with their day-to-day lives, even though Minnesota courts routinely deem insufficient even significant physical manifestations of emotional distress.

Finally, and independently, the District Court properly imposed "mandatory dismissal with prejudice" because the Saliers failed to submit an affidavit of expert review within (or even after) the time Minnesota law required. The Saliers' sole argument on appeal for why no affidavit was needed—that their allegations did not require expert testimony—fails because it (1) was not developed in the District Court; (2) misstates their own allegations; and (3) fails to grapple with the District Court's explanation of why their claims *do* require expert testimony.

10

Similarly flawed is the Saliers' challenge to the District Court's refusal to extend the affidavit deadline. The District Court denied an extension for three reasons. The Saliers contest the first—that their claims were meritless—simply by incorporating their unpersuasive responses to the dismissal of their claims on the merits. And they ignore the other two: that they had no good excuse for missing the deadline, and failed to exercise due diligence.

The District Court's decision should be affirmed in full.

## STANDARDS OF REVIEW

This Court "review[s] the dismissal of claims *de novo*, 'accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'" *City of Ashdown v. Netflix, Inc.*, 52 F.4th 1025, 1026 (8th Cir. 2022). "To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 795 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "This standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Minnesota substantive law governs the Saliers' claims in this diversity case. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although applying state law can require predicting how the state high court would decide an unsettled

11

issue, "[i]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." *Id.* at 665, 673; *see also Kingman v. Dillard's, Inc.*, 643 F.3d 607, 615 (8th Cir. 2011) (federal courts' "role in diversity cases is to interpret state law, not to fashion it"). Federal courts thus properly "decline to extend the reach of [state] laws … as a matter of first impression." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 519 (8th Cir. 2018) (citing *Ashley Cnty.*, 552 F.3d at 673). This Court reviews a "district court's decision not to certify a question of law under an abuse of discretion standard." *Godfrey v. State Farm Fire & Cas. Co.*, 11 F.4th 601, 603 (8th Cir. 2021).

## ARGUMENT

## I.    THE DISTRICT COURT CORRECTLY DISMISSED THE SALIERS' CLAIMS ON THE MERITS.

### A. The Saliers' Purported "Self-Determination" Claim Rests on a Tort that Does Not Exist.

The Saliers' claims that Walmart violated their putative "common law right to self-determination" rest on a tort that, as the District Court correctly held, Minnesota law does not recognize. Add. 6.

In arguing otherwise, the Saliers rest almost exclusively on out-of-context dicta from the Minnesota Supreme Court's 1977 decision in *Cornfeldt v. Tongen*, 262 N.W.2d 684 (Minn. 1977). There, a doctor performed surgery without discussing with the patient the risks of proceeding despite abnormal lab results, and

the patient ultimately died.  In that context, the Minnesota Supreme Court recognized for the first time "a cause of action for negligent nondisclosure of risks attendant to proposed or alternative methods of treatment" that "will lie if the patient was not properly informed of a risk inhering in the treatment, the undisclosed risk materialized in harm, and consent to the treatment would not have been secured if the risk were disclosed." *Id.*  The court added that doctors generally have a duty to disclose a risk if (1) they are or should be aware of it; and (2) accepted medical practice requires the disclosure, or "a reasonable person in … the patient's position would likely attach significance to that risk or alternative in formulating his decision to consent to treatment." *Id.* at 699-700.

In reaching this holding, *Cornfeldt* observed that "[o]ur society is morally and legally committed to the principle of self-determination, a corollary of which is the right of every adult of sound mind to determine what shall be done with his own body." *Id.* at 701.  But far from anything resembling this case or a right to *compel* treatment, that language supported only the conclusion that "[p]atient self-determination is meaningful only if the patient has received sufficient information so that he can knowingly and intelligently assess the risks and benefits of treatment *before giving or withholding consent*." *Id.* at 702 (emphasis added).

The District Court properly rejected the Saliers' attempt to use a "fragment of sloppy dicta in an opinion that analyzed a different issue" to spin out a "sweeping

13

new right" that "has never been recognized by any state" (let alone by Minnesota)—namely, the purported common-law right to "force a medical provider to provide a particular type of medical treatment against his or her professional judgment." Add. 7-8. As the District Court recognized, it would be improper to expand Minnesota law in this "mind-boggling" fashion based on a sentence of dicta that "has not been cited a single time by either the Minnesota Supreme Court or the Minnesota Court of Appeals since it was published 45 years ago." Add. 7-9. Indeed, doing so would "completely upend the legal regulation of doctors, dentists, physician assistants, nurses, pharmacists, and other health-care professionals." Add. 8.

The Saliers' insistence that *Cornfeldt* required Walmart's pharmacist to dispense their prescriptions runs headlong into the Minnesota Supreme Court's explicit statement that the tort *Cornfeldt* recognized "does not involve negligence in the administration of treatment, *in failure to treat*, or in failure to properly diagnose." *Madsen v. Park Nicollet Med. Ctr.*, 431 N.W.2d 855, 861 (Minn. 1988) (emphasis added). Rather, *Madsen* clarified that under that "consent/nondisclosure doctrine," there is "liability … *only* for failure to secure the patient's informed consent to treatment" that is actually provided and that "results in harm." *Id.* (emphasis added).

At most, the Saliers have alleged a failure to treat—precisely the sort of allegation that *Cornfeldt*'s negligent nondisclosure tort does not cover. *Id.* Rather than failing to disclose information about risks, Walmart's pharmacist disclosed and

14

explained his professional judgment that "Ivermectin was dangerous for [William Salier] despite his doctor's prescription," that the prescriptions "imperil[ed] the Saliers' health," and that he declined to fill the prescriptions. App. 5-6; R. Doc. 9 at 3-4, ¶¶ 18-19. The Saliers' own allegations thus show that Walmart's pharmacist's decision rested on his own fully disclosed professional judgments about the risks of the proposed treatment.

Moreover, even if binding Minnesota Supreme Court precedent did not foreclose the Saliers' theory of liability, the self-determination claims would still lack merit. Federal courts properly exercise caution when confronting a request to extend state law beyond anything the state legislature or high court has recognized. *Ashley Cnty.*, 552 F.3d at 665. Indeed, even when "two competing yet sensible interpretations of state law exist, [federal courts] should opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of [the relevant state] decides differently." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 253 & n.10 (3d Cir. 2010) (internal quotation marks omitted) (collecting cases including *Ashley County*). So even if this were merely an "issue of first impression" as the Saliers incorrectly claim, *see* Salier Br. 21—rather than one already settled adversely to them—their claims would still fail. *Park Irmat Drug Corp.*, 911 F.3d at 519 (citing *Ashley County* in "declin[ing] to extend the reach of [state] laws … as a matter of first impression").

Appellate Case: 22-2960   Page: 22   Date Filed: 02/08/2023 Entry ID: 5243868

Unable to claim Minnesota law recognizes the tort they advance, the Saliers again fall back on a request to certify the issue to the Minnesota Supreme Court. *See* Salier Br. 20-21. But "[a] federal court's 'most important consideration' in deciding whether to certify a question to a state court is whether it 'finds itself genuinely uncertain about a question of state law.'" *Roth v. Life Time Fitness, Inc.*, No. 16-cv-2476, 2017 WL 1628877, at *5 (D. Minn. May 1, 2017) (quoting *Johnson v. John Deere Co.*, 935 F.2d 151, 153 (8th Cir. 1991)). Thus, "[a]bsent a close question and lack of state sources enabling a nonconjectural determination, a federal court should not" use certification to "avoid its responsibility to determine all issues before it." *Smith v. SEECO, Inc.*, 922 F.3d 406, 412 (8th Cir. 2019) (quoting *Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake*, 771 F.2d 1153, 1157 n.2 (8th Cir. 1985)). That is especially true where, as here, the party suggesting certification "chose to invoke federal jurisdiction" in the first place. *Id.* (quoting 17A Charles Alan Wright et al., Fed. Prac. & Proc. Juris. § 4248 (3d ed. 2017 update)).

Here, as the District Court recognized, certification would be improper because it "is not a close question" whether a single sentence of dicta has created a broad, new cause of action that has gone completely unrecognized by Minnesota courts for the 45 years since that sentence appeared. Add. 9 n.2. The District Court's conclusion that the Saliers' request for certification is groundless was thus correct, and certainly not an abuse of discretion.

16

Finally, because the tort the Saliers assert simply does not exist, the Saliers' assertion that more facts are "necessary fully to evaluate this claim" makes no sense. *See* Salier Br. 19. Taking the facts alleged as true—as the Saliers never dispute the District Court properly did, *see* Add. 5—the self-determination claims fail as a matter of law. This Court should thus affirm the dismissal of these claims on the merits.

### B. The Saliers Fail to Allege Extreme and Outrageous Conduct and Severe Emotional Distress as Required to Plead a Viable IIED Claim.

The Saliers' Amended Complaint also fails to state an IIED claim, as it fails to allege multiple elements of the tort. The elements of IIED under Minnesota law are "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983). "The extreme nature of conduct necessary to invoke the tort and the necessary severity of consequent mental distress emphasizes the limited nature of the action and the strong policy to prevent fictitious and speculative claims." *Bohdan v. Alltool Mfg., Co.*, 411 N.W.2d 902, 908 (Minn. Ct. App. 1987). The Saliers have failed to plausibly allege either of these core elements.[2]

---

[2] The Saliers inaccurately claim that Walmart has conceded they "alleged that the defendants acted intentionally and recklessly in endangering the Saliers' health and lives." Salier Br. 23. Although Walmart takes as true the allegation that its

Appellate Case: 22-2960     Page: 24     Date Filed: 02/08/2023 Entry ID: 5243868

### 1. The District Court Correctly Held That the Saliers Failed to Plausibly Plead Extreme and Outrageous Conduct.

Under Minnesota law, conduct is "extreme and outrageous" for IIED purposes only if it is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Hubbard*, 330 N.W.2d at 439. As the District Court aptly explained, this standard requires far more than mere unreasonableness, since "[c]ivilized societies tolerate a lot of unreasonable conduct." Add. 9-10 (brackets in original) (quoting *Edison v. Nat'l R.R. Passenger Corp.*, No. 20-cv-614, 2021 WL 2515516, at *10 (D. Minn. June 18, 2021)). For example, the Minnesota Supreme Court has held that filing a knowingly false police report about one's employer—while egregious—"does not rise to the level of outrage that is 'utterly intolerable to the civilized community.'" *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 866 (Minn. 2003) (quoting *Hubbard*, 330 N.W.2d at 439); *see also, e.g.*, *Strauss v. Thorne*, 490 N.W.2d 908, 913 (Minn. Ct. App. 1992) (potentially defamatory allegations of child abuse, made with malice and causing a family to be denied insurance, not "extreme and outrageous" for IIED purposes).

Even at the pleading stage, courts routinely dismiss IIED claims that involve even obviously unreasonable conduct that nonetheless falls short of the tort's stringent standards. Examples include:

---

pharmacist *intentionally declined to fill the prescriptions*, it emphatically disputes that he intentionally or recklessly "endanger[ed] the Saliers' health and lives."

- School officials engaged in an "arguably … callous, intrusive, and insensitive abuse of power" including forcing a 12-year-old student to surrender passwords to her Facebook and email accounts and then searching through them in front of her for sexual conversations she had with a male classmate (not at school or during school hours), even though the district employees' alleged conduct violated the First and Fourth Amendments so clearly as to overcome qualified immunity. *R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist. No. 2149*, 894 F. Supp. 2d 1128, 1134-35, 1141, 1143-44, 1146 (D. Minn. 2012). "As troubling as [these] allegations may be, … they do not meet the requirements for an IIED claim" because "a reasonable fact-finder could not find that the alleged behavior of the school defendants was utterly intolerable to the civilized community." *Id.* at 1146.

- An employer "threatened to discharge [plaintiff] if he did not resign, made false accusations about his job performance, evicted him from employer-provided housing, claimed that he engaged in sexually-inappropriate behavior with female staff and acted in a generally improper fashion." *Elkharwily v. Mayo Holding Co.*, 955 F. Supp. 2d 988, 999 (D. Minn. 2013). Yet "[e]ven if true," that did "not rise to the level of extreme or outrageous conduct." *Id.*

19

- A school district failed to correct a "hurtful" situation in which a coach "singl[ed] … out" a student-athlete who had criticized her "for ridicule and punishment" by refusing to talk to her, "telling her teammates not to talk to her, embarrassing and verbally attacking her in front of others, excluding her from team functions, and benching her during games." *Albert v. Indep. Sch. Dist. No. 709*, No. A12-1516, 2013 WL 1500986, at \*1, \*4 (Minn. Ct. App. Apr. 15, 2013). The court ruled that "it cannot be said that [such conduct] exceeds the boundaries of decency or is utterly intolerable to the civilized community." *Id.* at \*4.

Given the high bar for pleading extreme and outrageous conduct, the District Court properly concluded that "this case does not remotely approach" the level needed to state an IIED claim. Add. 10. The District Court explained that "every major medical authority and government agency that had addressed the issue had said that ivermectin and hydroxychloroquine should not be used to treat COVID-19." *Id.*; *see* Add. 10-11 n.4 (collecting judicially noticeable sources); Add. 8 (collecting cases declining to require health care providers to treat COVID-19 with ivermectin). This uniform advice of medical authorities establishes that the conduct of Walmart's pharmacist was not wrongful at all, much less "so atrocious that it passe[d] the boundaries of decency and [was] utterly intolerable to the civilized community," *Hubbard*, 330 N.W.2d at 439.

That conclusion is only strengthened by the similar, independent decisions of other providers—the clinic William Salier first visited, and Hy-Vee—to decline to prescribe or dispense ivermectin or hydroxychloroquine.  App. 5-6; R. Doc. 9 at 3-4, ¶¶ 12, 21; *see also* Salier Br. 12 (Saliers "were unable to find a Minnesota physician willing to prescribe" ivermectin).  And it is underscored again by the fact that Walmart's pharmacist's exercise of professional judgment aligned with guidance from the Minnesota Board of Pharmacy.[3]  Behavior that tracks that of a licensing board and is consistent with others in the community is by definition not utterly intolerable to the civilized community.  *See K.A.C. v. Benson*, 527 N.W.2d 553, 560 (Minn. 1995) (no IIED liability where doctor followed his licensing board's guidance); *Sarkisian v. Rooke*, No. 06-cv-170, 2007 WL 9811040, at \*6 (E.D. Pa. Mar. 23, 2007) ("typical business behavior" that was not "extreme deviance from the norms of professional conduct[] or from the social norms of a community" cannot be "extreme and outrageous" under Pennsylvania law).

---

[3] Minnesota Board of Pharmacy, *Frequently Asked Questions: Complaints* ("Pharmacy Board FAQs") https://mn.gov/boards/pharmacy/public/ frequentlyaskedquestions.jsp (last visited Feb. 8, 2023) (answer to question "Can a pharmacist refuse to fill a prescription for Ivermectin to treat or prevent COVID-19?" begins: "It is the legal responsibility of the pharmacist to determine the legal validity of a prescription and ensure the prescription is clinically appropriate for the patient. A pharmacist may refuse to fill or refill a prescription if, in the pharmacist's professional judgement, there is a question as to the drug's safety and/or efficacy.").

As the District Court succinctly put it, "[o]bviously, there is nothing extreme or outrageous about a pharmacist's following the advice of [medical] authorities" in declining to fill prescriptions. Add. 10-11. While the District Court suggested that "there *might* be circumstances under which a pharmacist's refusal to dispense life-saving medicine … because of the pharmacist's political beliefs … could be extreme and outrageous," any such circumstances would be miles from this case. Add. 10 (emphasis in original). After all, by the Saliers' own allegations, Walmart's pharmacist explained to Karla Salier and Dr. James his conclusion that ivermectin was "dangerous," "imperil[ed] the Saliers' health," and was not "appropriate to treat COVID-19." App. 5-6; R. Doc. 9 at 3-4, ¶¶ 17-20. Thus, contrary to the Saliers' unsupported speculation that Walmart's pharmacist merely "paid lip service to the Saliers' health and safety," Salier Br. 25, the District Court correctly recognized that "nothing alleged by the Saliers makes plausible their claim that the reason the pharmacist[] at Walmart … refused to fill their prescriptions was not that doing so would contravene the overwhelming weight of medical authority, but because of political beliefs or corporate policies that were unrelated to that authority," Add. 11.

Nor, finally, can the Saliers rest successful IIED claims on the idea that the pharmacist's explanation of his conclusion was "rude," "paternalist," or "lectur[ing]." *See* App. 12-13; R. Doc. 9 at 10-11, ¶¶ 54, 62; *see also* Salier Br. 26. As a matter of law, "insults" or "indignities" do not give rise to IIED claims. *Langeslag*, 664

22

N.W.2d at 865 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Thus, the District Court was correct that, even accepting the Saliers' characterization of the pharmacist's explanation as a rude lecture or taunt, they have still failed to allege facts that, if proved, state a claim upon which relief can be granted. Add. 10 & n.3.

### 2. The Saliers Also Failed to Plausibly Allege Severe Emotional Distress.

The Saliers' IIED claims also fail on the merits for a second, independent reason. Even when a plaintiff adequately alleges extreme and outrageous conduct, Minnesota law requires him to "sustain a similarly heavy burden of production in his allegations regarding the severity of his mental distress." *Hubbard*, 330 N.W.2d at 439; *see also Stead-Bowers v. Langley*, 636 N.W.2d 334, 343 (Minn. Ct. App. 2001) (assuming extreme and outrageous conduct element met, IIED claim still failed because plaintiff did not plausibly allege "that the conduct caused her to suffer severe emotional distress"). Indeed, the distress must be "so severe that no reasonable man could be expected to endure it," *Langeslag*, 664 N.W.2d at 869, and even significant manifestations of distress have been held insufficient.

For example, the Minnesota Supreme Court has held that depression, "stomach disorders" including "throwing up," a "skin rash," and "high blood pressure" fall short when the defendant "never missed work, never filed a claim for workers' compensation, and never saw a doctor" for those problems. *Hubbard*, 330 N.W.2d at 440. Likewise insufficient are allegations of "reoccurring headaches,

23

night sweats, insomnia, illness and physical pain." *Besett v. Wadena Cnty.*, No. 10-cv-934, 2010 WL 5439720, at *17 (D. Minn. Dec. 7, 2010) (R&R), *adopted*, 2010 WL 5441937 (D. Minn. Dec. 28, 2010); *see also, e.g.*, *Thomas v. UnitedHealth Grp., Inc.*, No. 12-cv-47, 2014 WL 5307579, at *16 (D. Minn. Oct. 16, 2014) (numbness, anxiety, and a tight and burning chest that "did not prevent [plaintiff] from working or caring for her family" insufficient); *Elstrom v. Indep. Sch. Dist. No. 270*, 533 N.W.2d 51, 57 (Minn. Ct. App. 1995) ("insomnia, crying spells, [plaintiff's] fear of answering her door and telephone, and depression, which caused her to seek treatment" insufficient). Allegations that a plaintiff "feared for his life" and "suffers from sleepless nights" are also not enough. *Edison*, 2021 WL 2515516, at *11.

Against that backdrop, the Saliers' cursory allegations of the severity of any emotional distress fall far short. They primarily allege that they were afraid for their health and William Salier's life. App. 12, 14; R. Doc. 9 at 10, 12, ¶¶ 55, 63; *see* Salier Br. 25. But such claims are insufficient. *Edison*, 2021 WL 2515516, at *11. Indeed, according to the Saliers' own allegations, they quickly secured veterinary ivermectin, took it, and speedily recovered from COVID-19 with no ill effects. Add. 3; *see* App. 6-7; R. Doc. 9 at 4-5, ¶¶ 22-27. There is not even a conclusory allegation that any emotional distress interfered with the Saliers' lives or daily activities. Nor is there even the degree of physical manifestation of emotional distress such as headaches or stomach problems that Minnesota courts routinely find insufficient.

The District Court had no need to address this element, but this Court "may affirm the judgment on any basis disclosed in the record, whether or not the district court agreed with or even addressed that ground." *PFS Distrib. Co. v. Raduechel*, 574 F.3d 580, 591 (8th Cir. 2009). The lack of sufficient allegations on this element thus provides an alternative basis to affirm the merits dismissal of the IIED claims.

## II. THE DISTRICT COURT ALSO CORRECTLY DISMISSED THE SALIERS' CASE FOR FAILING TO COMPLY WITH MINNESOTA'S REQUIREMENT OF AN AFFIDAVIT OF EXPERT REVIEW.

As the District Court held, "[e]ven if the Saliers had pleaded one or more plausible claims, the Court would be required to dismiss those claims" for failing to satisfy Minnesota's affidavit requirement. Add. 15. Like many states, Minnesota imposes such requirements in malpractice and similar cases to deter speculative suits. *Stroud v. Hennepin Cnty. Med. Ctr.*, 556 N.W.2d 552, 555 (Minn. 1996). A plaintiff must therefore serve an affidavit from counsel "with the summons and complaint" stating that "the facts of the case have been reviewed by the plaintiff's attorney with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff." Minn. Stat. § 145.682, subdivs. 2, 3(1).

The failure to provide this affidavit "within 60 days after demand … results, upon motion, in mandatory dismissal with prejudice of each cause of action as to

25

which expert testimony is necessary to establish a prima facie case." *Id.*, subdiv. 6(a)(1).  A motion to dismiss qualifies as the necessary demand where, as here, it "provide[s] adequate notice that an affidavit of expert review is required." *Judah v. Ovsak*, 550 F. Supp. 3d 687, 707 (D. Minn. 2021) (quoting *Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 215 (Minn. 2007)).

Minnesota law requires such an affidavit of expert review in any suit that alleges "malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case." Minn. Stat. § 145.682, subdiv. 2.  The definition of "health care provider" includes "all persons or entities providing health care as defined in section 145.61, subdivisions 2 and 4," *id.*, subdiv. 1, which in turn expressly includes "a person licensed or registered … to practice as a pharmacist," *id.* § 145.61, subdiv. 2.

State and federal courts in Minnesota consistently recognize this affidavit requirement's applicability to claims that turn on "conduct that is connected to a person's professional licensure," *C.C. v. Fairview Health Servs.*, No. A09-2320, 2010 WL 3000603, at *2 (Minn. Ct. App. Aug. 3, 2010) (quoting *Paulos v. Johnson*, 597 N.W.2d 316, 320 (Minn. Ct. App. 1999)), including, specifically, claims for negligent nondisclosure under *Cornfeldt*, *see Haile v. Sutherland*, 598 N.W.2d 424,

26

427-28 (Minn. Ct. App. 1999), and IIED claims, *see Phillips v. Fairview Health Servs.*, No. 10-cv-4442, 2011 WL 6151514, at *2-3 (D. Minn. Dec. 12, 2011).[4]

In dismissing the Saliers' case on this independent ground, the District Court noted that it was "undisputed that the Saliers' counsel failed to serve this affidavit with the summons and complaint; that defendants then made a demand for the affidavit; and that the Saliers' counsel did not comply with that demand within 60 days." Add. 16 (internal citation omitted). The District Court added that, "even if the Saliers had not conceded the point, … the statute embraces all of the Saliers' claims" because each of those claims "requires evidence that defendants violated the standard of care applicable to pharmacists." Add. 17-18. For example, the operative complaint alleged "that defendants lacked a 'reasonable medical or scientific basis for declining to fill' the prescriptions," and "in order to show causation, the Saliers would have to demonstrate that their prescriptions would have been filled but for the allegedly tortious conduct, and that would require the Saliers to show that filling their prescriptions was consistent with the standard of care." Add. 18.

---

[4] As numerous District of Minnesota decisions have found—and as the Saliers have never disputed in the District Court or this Court, thus forfeiting any such argument—"the affidavit-of-expert-review requirement of § 145.682 is a substantive, not a procedural, requirement," and thus applies fully in diversity cases like this one. *Vogel v. Turner*, No. 11-cv-446, 2012 WL 5381788, at *3 (D. Minn. Nov. 1, 2012) (collecting cases).

27

The Saliers offer a single, triply flawed response on appeal. They claim that "[t]here was no need for an expert" because, instead of suing "individual pharmacists for breaching their duty of care in the performance of a discretionary act[,] they sued two corporations that offer pharmaceutical services for having a policy that required the pharmacist to behave in a ministerial manner." Salier Br. 28. That argument is forfeited, inconsistent with the Saliers' own allegations of what Walmart's pharmacist did, and in any event non-responsive to the District Court's analysis.

*First*, as to preservation, the Saliers never developed any argument to the District Court that an affidavit was unnecessary. To the contrary, the Saliers' counsel twice took "responsibility" for failing to submit it. Although in opposing the motion to dismiss, the Saliers purported not to "conced[e]" that their claims "are pure malpractice claims," they developed no argument that the statute—which applies not just to "pure malpractice," but also to "error, mistake, or failure to cure"—would not apply. Instead, the brief represented that the Saliers would "secure such an affidavit." R. Doc. 28 at 26. Then, at argument, when the District Court noted that "you conceded you were supposed to file this affidavit," the Saliers' counsel did not disagree and again took "responsibility" for the failure to do so. App. 80; R. Doc. 35 at 33. "Save for a brief comment about their IIED claim" not being a pure malpractice claim, "the Saliers did not dispute at oral argument that all of their claims fall within the scope" of the requirement. Add. 17. The Saliers have thus

28

forfeited—if not waived—this argument.  *See, e.g.*, *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 341 (8th Cir. 2018) (argument made in single undeveloped sentence is forfeited); *Henning v. Mainstreet Bank*, 538 F.3d 975, 979 (8th Cir. 2008) (arguments not raised below typically forfeited on appeal).

*Second*, the Saliers' argument contradicts their own allegations.  The Saliers assert that they sued "two corporations that offer pharmaceutical services for having a policy that required the pharmacist to behave in a ministerial manner," and that no expert is needed for a jury to "conclude that a corporate office has no business telling doctors what they can and cannot prescribe for their patient."  Salier Br. 28.  But the Amended Complaint nowhere alleges Walmart's pharmacist acted because of such a policy or because of instructions from a "corporate office" that made his job purely "ministerial."  Indeed, elsewhere in their brief—and in their Amended Complaint—the Saliers recognize that Walmart's pharmacist provided his own health-based reasons for his decision.  *Id.* at 24; *see* App. 5-6; R. Doc. 9 at 3-4, ¶¶ 17-20.

*Third*, the Saliers' argument ignores the District Court's reasoning that, even if some improper reason had caused the pharmacist's decision not to fill the prescriptions, establishing causation still would have required a showing that filling the prescription would be consistent with the standard of care.  Add. 18.  Accordingly, even were it not forfeited and unsupported by their allegations, this argument would not allow the Saliers to evade the affidavit requirement.

29

Finally, the Saliers' half-hearted suggestion that they are *still* entitled to more time to secure the affidavit is baseless. The affidavit was due "with the summons and complaint" in January 2022. Minn. Stat. § 145.682, subdiv. 2(1). Their case became subject to "mandatory dismissal with prejudice" when they failed to provide an affidavit within sixty days of Walmart's April 5, 2022, request. *Id.* § 145.682, subdiv. 6(a). The Saliers first asked for a "moderate" extension on June 27, 2022, weeks after that sixty-day window expired. By the time the District Court issued its opinion on August 19, 2022—more than seven months after the affidavit was due, and more than two months after the failure to submit it subjected the Saliers' case to "mandatory dismissal with prejudice"—they had still submitted no affidavit.

As the District Court correctly noted, an extension of the sixty-day window requires the plaintiff to show "excusable neglect," which in turn requires, among other things, "a reasonable suit on the merits," "a reasonable excuse for failure to comply with" the statutory time limits, and "due diligence after receiving notice of the time limit." Add. 19. The Court explained that the Saliers met *none* of these requirements, as "they have not come close to pleading a viable claim," *id.*, and lacked both a "reasonable excuse" and "due diligence," since there was no reason the Saliers' attorney could not have produced the affidavit if, as he suggested at argument, he had been able to find an expert willing to support the Saliers' claims, Add. 19-20.

On appeal, the Saliers challenge only the "reasonable suit on the merits" prong of the analysis by referring back to their arguments against dismissal on the merits. Salier Br. 29. For the reasons given above, the District Court was correct that there is no reasonable case on the merits here. *See supra* Section I. But even were that not the case, by forgoing any challenge to the other necessary elements of excusable neglect, the Saliers have foreclosed any possibility of relief on the extension question.

* * *

In short, Minnesota law required an affidavit of expert review for all of the Saliers' claims. The Saliers waived or forfeited any argument to the contrary, and in any event cannot show otherwise. And given how they missed several opportunities to provide the required affidavit, they cannot possibly show excusable neglect. The only reasonable conclusion is the one the District Court reached: the failure to provide the required affidavit "results … in mandatory dismissal with prejudice" and thus provides a second, fully independent reason to affirm the District Court's dismissal with prejudice of the Saliers' claims.

## CONCLUSION

For all these reasons, the Court should affirm the District Court's dismissal of the Saliers' claims with prejudice.

Dated:  February 8, 2023

*/s/ Matthew J. Rubenstein*

KRISTIN K. ZINSMASTER
MATTHEW J. RUBENSTEIN
JONES DAY
90 South 7th Street, Suite 4950
Minneapolis, MN 55402
Tel: (612) 217-8800
kzinsmaster@jonesday.com
mrubenstein@jonesday.com

*Counsel for Appellee Walmart Inc.*

32

# CERTIFICATE OF COMPLIANCE

I hereby certify that: (1) this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 7,833 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and (2) this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in a 14-point Times New Roman font in the text and footnotes.

Dated: February 8, 2023

*/s/ Matthew J. Rubenstein*
Matthew J. Rubenstein

*Counsel for Appellee*

Appellate Case: 22-2960   Page: 40   Date Filed: 02/08/2023 Entry ID: 5243868

## CERTIFICATE OF ELECTRONIC SUBMISSION

I hereby certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses and is free from viruses.

Dated:  February 8, 2023

/s/ Matthew J. Rubenstein
Matthew J. Rubenstein

*Counsel for Appellee*

Appellate Case: 22-2960    Page: 41    Date Filed: 02/08/2023 Entry ID: 5243868

## CERTIFICATE OF SERVICE

I hereby certify that, on February 8, 2023, I caused a true and correct copy of the foregoing brief to be electronically filed with the Clerk of the Court by using the appellate CM/ECF system, which will send notification of such filing to all registered users of the CM/ECF system.

Dated:  February 8, 2023

*/s/ Matthew J. Rubenstein*
Matthew J. Rubenstein

*Counsel for Appellee*

Appellate Case: 22-2960    Page: 42    Date Filed: 02/08/2023 Entry ID: 5243868