No. 22-2960
_____

In the
United States Court of Appeals
for the Eighth Circuit
_____

William Salier and Karla Salier,

Plaintiffs-Appellants,

v.

Walmart, Inc. and Hy-Vee, Inc.

Defendants-Appellees.
_____

On Appeal from the United States District Court
for the District of Minnesota
District Court No. 22-cv-00082-PJS-ECW

---

**BRIEF OF DEFENDANT-APPELLEE HY-VEE, INC.**

---

DORSEY & WHITNEY LLP
  Stephen P. Lucke
  Andrew B. Brantingham
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

*Attorneys for Appellee Hy-Vee, Inc.*

## SUMMARY OF THE CASE

The Saliers sued Hy-Vee, Inc. ("Hy-Vee") for declining to dispense ivermectin and hydroxychloroquine to treat their COVID-19. Hy-Vee's decision was in accord with "virtually every medical and governmental authority to address the issue," which said these drugs "should not be used to treat COVID-19." Add. 1; R. Doc. 36, at 1. Although the Saliers quickly "recovered and are fine," Aplt. Br. 13, they now assert claims against Hy-Vee for violating their "right to self-determination" and intentional infliction of emotional distress ("IIED").

The district court rightly granted Hy-Vee's motion to dismiss, as neither Minnesota nor *any* jurisdiction recognizes a "self-determination" right permitting a patient to compel a healthcare professional to administer a particular treatment, and as Hy-Vee's alleged conduct was not the type of "extreme and outrageous" behavior that could support an IIED claim. The district court also correctly recognized—and the Saliers conceded before the district court—that the Saliers' claims sound in medical malpractice and are subject to the expert affidavit requirements of Minn. Stat. § 145.682. Their failure to serve the statutorily required affidavit independently mandates dismissal.

Hy-Vee believes the judgment may be affirmed without oral argument. If oral argument would assist the Court, Hy-Vee agrees 10 minutes is appropriate.

Appellate Case: 22-2960     Page: 2     Date Filed: 02/08/2023 Entry ID: 5244009

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rules of Appellate Procedure 26.1 and 28(b), and Eighth Circuit Local Rule 26.1A, Hy-Vee states that it does not have a parent corporation and there is no publicly held company that owns 10% or more of its stock.

Appellate Case: 22-2960    Page: 3    Date Filed: 02/08/2023 Entry ID: 5244009

# TABLE OF CONTENTS

STATEMENT OF ISSUES.........................................................................1

STATEMENT OF THE CASE ................................................................3

    I.    The Saliers Seek Ivermectin and Hydroxychloroquine
        to Treat their COVID-19..........................................................3

    II.   Government and Health Authority Guidance on the
        Treatment of COVID-19 with Ivermectin and
        Hydroxychloroquine During the Relevant Time ...................5

    III.  Procedural History ...................................................................6

SUMMARY OF ARGUMENT ...............................................................10

ARGUMENT ..........................................................................................13

    I.    THE DISTRICT COURT CORRECTLY DISMISSED
        THE SALIERS' "SELF-DETERMINATION" CLAIM..........13

        A.    STANDARD OF REVIEW ...........................................13

        B.    Minnesota Law Does Not Recognize a "Right to
               Self-Determination" Encompassing the Right to
               Compel a Healthcare Provider to Provide Specific
               Treatments .................................................................14

        C.    Creating a New Right to Compel Specific Medical
               Treatment Conflicts with Positive Minnesota Law
               and Good Policy...........................................................19

    II.   The District Court Did Not Abuse Its Discretion in
        Declining to Certify the Saliers' "Self-Determination"
        Claim to the Minnesota Supreme Court.............................23

        A.    Standard of Review......................................................23

        B.    This Case Does Not Present a "Close Question,"
               and the District Court Rightly Declined to Certify
               the Saliers' Claim to the Minnesota Supreme
               Court...........................................................................24

Appellate Case: 22-2960    Page: 4    Date Filed: 02/08/2023 Entry ID: 5244009

III.   THE DISTRICT COURT DID NOT ERR IN
       DISMISSING THE SALIERS' CLAIM FOR
       INTENTIONAL INFLICTION OF EMOTIONAL
       DISTRESS ................................................................ 28

       A.   The Saliers Have Waived their IIED Claim
            Against Hy-Vee By Failing to Support the Claim
            on Appeal .......................................................... 28

       B.   The District Court Correctly Dismissed the IIED
            Claim Against Hy-Vee for Failure to Plead the
            Essential Element of "Extreme and Outrageous"
            Conduct ............................................................. 30

       C.   The Saliers' IIED Claim Fails for the
            Independent Reason that they Failed to Plausibly
            Allege Sufficiently Severe Emotional Distress .......... 366

IV.    THE DISTRICT COURT DID NOT ERR IN
       DISMISSING THE SALIERS' CLAIMS UNDER
       MINN. STAT. § 145.682 ........................................ 388

       A.   The Statutory Requirement and Standard of
            Review .............................................................. 38

       B.   The District Court Correctly Concluded That All
            of the Saliers' Claims Require Expert Testimony
            and Are Subject to the Statutory Requirement .......... 40

            1.   The Saliers Conceded the Statute Applies ......... 40

            2.   The District Court Correctly Applied the
                 Statute Even Absent the Saliers' Waiver .......... 41

       C.   The Saliers Failed to Show Excusable Neglect ......... 455

CONCLUSION .................................................................. 46

Appellate Case: 22-2960    Page: 5    Date Filed: 02/08/2023 Entry ID: 5244009

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abbinanti v. Presence Cent. & Suburban Hosps. Network*,
191 N.E.3d 1265 (Ill. App. Ct. 2021) ................................................. 18

*Ascente Bus. Consulting, LLC v. DR myCommerce*,
9 F.4th 839 (8th Cir. 2021) .................................................. 41

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................ 14

*Ashley Cty., v. Pfizer*,
552 F.3d 659 (8th Cir. 2009) ............................................ 15, 22, 26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007) ................................................................ 14

*Berrington v. Wal-Mart Stores, Inc.*,
696 F.3d 604 (6th Cir. 2012) .......................................... 25, 27

*Broehm v. Mayo Clinic Rochester*,
690 N.W.2d 721 (Minn. 2005) ............................................ 39

*Brown-Wilbert, Inc. v. Copeland Buhl & Co. P.L.L.P.*,
732 N.W.2d 209 (Minn. 2007) ............................................ 40

*C. C. v. Fairview Health Servs.*,
No. A09-2320, 2010 Minn. App. Unpub. LEXIS 754 (Minn.
Ct. App. Aug. 3, 2010) ......................................................... 42

*Carpenters' Pension Fund of Ill. v. Neidorff*,
30 F.4th 777 (8th Cir. 2022) .............................................. 29

*Chay-Velasquez v. Ashcroft*,
367 F.3d 751 (8th Cir. 2004) .............................................. 29

*Chizmadia v. Smiley's Point Clinic*,
873 F.2d 1163 (8th Cir. 1989) ............................................ 42

Appellate Case: 22-2960    Page: 6    Date Filed: 02/08/2023 Entry ID: 5244009

*Christopherson v. Bushner,*
    33 F.4th 495 (8th Cir. 2022) ............................................................. 13

*Coleman v. Watt,*
    40 F.3d 255 (8th Cir. 1994) ............................................................... 14

*Conley v. Gibson,*
    355 U.S. 41 (1957) ............................................................................ 14

*Cornfeldt v. Tongen,*
    262 N.W.2d 684 (Minn. 1977) .................................................. *passim*

*D.A.B. v. Brown,*
    570 N.W.2d 168 (Minn. Ct. App. 1997) ............................................ 42

*DeMarco v. Christiana Care Health Servs., Inc.,*
    263 A.3d 423 (Del. Ch. 2021) ........................................................... 18

*Eklund v. Vincent Brass & Aluminum Co.,*
    351 N.W.2d 371 (Minn. Ct. App. 1984) ............................................ 36

*Ellingson v. Walgreen Co.,*
    78 F. Supp. 2d 965 (D. Minn. 1999) .................................................. 39

*Flores v. United States,*
    689 F.3d 894 (8th Cir. 2012) ................................................... 2, 38, 39

*Flores v. United States,*
    No. 09-CV-838, 2009 U.S. Dist. LEXIS 133026 (D. Minn.
    Dec. 9, 2009) .................................................................................... 45

*Gahl v. Aurora Health Care, Inc.,*
    977 N.W.2d 756 (Wis. Ct. App. 2022) .............................................. 18

*Gillis v. Principia Corp.,*
    832 F.3d 865 (8th Cir. 2016) ................................................... 2, 13, 30

*Godfrey v. State Farm Fire & Cas. Co.,*
    11 F.4th 601 (8th Cir. 2021) ............................................................. 23

*Hatfield v. Bishop Clarkson Mem. Hosp.,*
    679 F.2d 1258 (8th Cir. 1982) ...................................................... 1, 24

Appellate Case: 22-2960    Page: 7    Date Filed: 02/08/2023 Entry ID: 5244009

*Hawse v. Page*,
   7 F.4th 685 (8th Cir. 2021) .................................................................. 35

*Hubbard v. United Press Int'l, Inc.*,
   330 N.W.2d 428 (Minn. 1983) .................................................... *passim*

*Jenkins v. Winter*,
   540 F.3d 742 (8th Cir. 2008) ................................................................ 29

*Johnson v. John Deere Co., Div. of Deere & Co.*,
   935 F.2d 151 (8th Cir. 1991) ................................................... 1, 24, 25

*Judah v. Ovsak*,
   550 F. Supp. 3d 687 (D. Minn. 2021) ................................................. 40

*K.A.C. v. Benson*,
   527 N.W.2d 553 (Minn. 1995) ............................................................ 32

*Kloss v. Wal-Mart Stores, Inc.*,
   No. 11-cv-3382, 2013 U.S. Dist. LEXIS 9433 (D. Minn.
   Jan. 24, 2013) ...................................................................................... 43

*Kolosky v. Woodwinds Hosp.*,
   2009 Minn. App. Unpub. LEXIS 1249 (Dec. 1, 2009) ....................... 42

*Langeslag v. KYMN Inc.*,
   664 N.W.2d 860 (Minn. 2003) .................................................... *passim*

*Linden v. Siemers*,
   No. A11-780, 2012 Minn. App. Unpub. LEXIS 26 (Minn.
   Ct. App. Jan. 9. 2012) ......................................................................... 43

*Madsen v. Park Nicollet Med. Ctr.*,
   431 N.W.2d 855 (Minn. 1988) ............................................................ 16

*Maloney v. Fairview Community Hosp.*,
   451 N.W.2d 237 (Minn. Ct. App. 1990) ............................................. 45

*McDonald v. City of St. Paul*,
   679 F.3d 698 (8th Cir. 2012) ............................................................... 30

*Mendell v. Amgen, Inc. (In re Amgen Inc. Sec. Litig.)*,
   544 F. Supp.2d 1009 (C.D. Cal. 2008) .................................................5

vii

*Mumms v. Mornson,*
    708 N.W.2d 475 (Minn. 2006).................................................. 20

*Park Irmat Drug Corp. v. Express Scripts Holding Co.,*
    911 F.3d 505 (8th Cir. 2018)............................................... 1, 15

*Paulos v. Johnson,*
    502 N.W.2d 397 (Minn. Ct. App. 1993) ............................. 42

*Perkins v. Clark Equip. Co.,*
    823 F.2d 207 (8th Cir. 1987)................................................. 27

*Pisano v. Mayo Clinic Fla.,*
    333 So.3d 782 (Fla. Dist. Ct. App. 2022) ...................... 1, 17

*Richardson v. BNSF Ry. Co.,*
    2 F.4th 1063 (8th Cir. 2021) ............................................... 31

*Saunders v. Thies,*
    38 F.4th 701 (8th Cir. 2022) ............................................... 23

*Shock v. Tester,*
    405 F.2d 852 (8th Cir. 1969)............................................... 35

*Shoemaker v. UPMC Pinnacle Hosps.,*
    283 A.3d 885 (Pa. Super. Ct. 2022) .................................. 18

*Smith v. SEECO, Inc.,*
    922 F.3d 406 (8th Cir. 2019)................................... 1, 26, 27

*Spirtas Co. v. Nautilus Ins. Co.,*
    715 F.3d 667 (8th Cir. 2013)............................................... 36

*State v. Whipple,*
    173 N.W. 801 (Minn. 1919)................................................ 20

*Stroud v. Hennepin Cty. Med. Ctr.,*
    556 N.W.2d 552 (Minn. 1996)............................................ 39

*Teffeteller v. Univ. of Minn.,*
    645 N.W.2d 420 (Minn. 2002)............................................ 39

Appellate Case: 22-2960    Page: 9    Date Filed: 02/08/2023    Entry ID: 5244009

*Tex. Health Huguley, Inc. v. Jones*,
637 S.W.3d 202 (Tex. App. 2021).......................................... 18

*Tousignant v. St. Louis Cty.*,
615 N.W.2d 53 (Minn. 2000)................................................. 42

*Travelers Indem. Co. v. DiBartolo*,
171 F.3d 168 (3d Cir. 1999).................................................. 25

*Wolfchild v. Redwood Cty.*,
824 F.3d 761 (8th Cir. 2016)................................................. 13

*Zean v. Mary T., Inc.*,
No. A18-1586, 2019 Minn. App. Unpub. LEXIS 341 (Minn.
Ct. App. Apr. 22, 2019) ....................................................... 31

## Statutes

Minn. Stat. § 145.682 ......................................................... *passim*

Minn. Stat. § 151.06 .................................................... 1, 6, 20

Minn. Stat. § 480.065, subd. 3 ............................................ 24

## Other Authorities

Fed. R. Civ. P. 12.............................................................. *passim*

Ivermectin package insert,
https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid
=847a1dd7-d65b-4a0e-a67d-d90392059dac (last visited
Feb. 2, 2023)........................................................................ 5

Hydroxychloroquine package insert,
https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid
=84b00366-96ef-41e1-bac6-5d24acdb9e1d (last visited
Feb. 2, 2023)........................................................................ 5

Minn. Bd. of Pharm., Frequently Asked Questions,
Complaints,
https://mn.gov/boards/pharmacy/public/frequentlyaskedqu
estions.jsp (last visited Feb. 2, 2023) ................................. 6

Appellate Case: 22-2960    Page: 10    Date Filed: 02/08/2023 Entry ID: 5244009

Minn. R. 3100.011 (2022) ............................................................ 20

Minn. R. 6800.3100 (2022) ............................................................ 1

Minn. R. 6800.3110 (2022) ............................................................ 20

Restatement (Second) of Torts ................................................. 9, 36

Appellate Case: 22-2960     Page: 11     Date Filed: 02/08/2023 Entry ID: 5244009

# STATEMENT OF ISSUES

1. Whether the district court erred in dismissing the Saliers' claim for violation of an alleged "common law right to self-determination," which the Saliers concede presents a matter of "first impression in Minnesota" with no supporting Minnesota precedent, and which conflicts with state legislation, administrative rules, and guidance. Aplt. Br. i, 10, 12.

   <u>Apposite authorities</u>

   *Cornfeldt v. Tongen,* 262 N.W.2d 684 (Minn. 1977)

   *Park Irmat Drug Corp. v. Express Scripts Holding Co.,* 911 F.3d 505, 519 (8th Cir. 2018)

   *Pisano v. Mayo Clinic Fla.*, 333 So.3d 782 (Fla. Dist. Ct. App. 2022)

   Minn. R. 6800.3100 (2022)

2. Whether the district court abused its discretion in rejecting the Saliers' request to certify their "self-determination" claim to the Minnesota Supreme Court.

   <u>Apposite authorities</u>

   *Hatfield v. Bishop Clarkson Mem. Hosp.,* 679 F.2d 1258 (8th Cir. 1982)

   *Johnson v. John Deere Co., Div. of Deere & Co.*, 935 F.2d 151 (8th Cir. 1991)

   *Smith v. SEECO, Inc.,* 922 F.3d 406 (8th Cir. 2019)

3. Whether the district court erred in dismissing the Saliers' claim for intentional infliction of emotional distress because the complaint failed to plausibly allege that the Hy-Vee pharmacist's conduct, which was in accord with state administrative guidance, was extreme and outrageous.

Apposite authorities

*Langeslag v. KYMN Inc.,* 664 N.W.2d 860 (Minn. 2003)

*Gillis v. Principia Corp.*, 832 F.3d 865 (8th Cir. 2016)

*Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428 (Minn. 1983)

4.   Whether the district court erred in dismissing the Saliers' claims for failure to serve the affidavit of expert review required by Minn. Stat. § 145.682 when the Saliers had conceded such an affidavit was necessary, or abused its discretion in declining to grant additional time to serve such affidavit where the Saliers failed to demonstrate excusable neglect.

Apposite authorities

*Flores v. United States*, 689 F.3d 894 (8th Cir. 2012)

Minn. Stat. § 145.682

2

## <u>STATEMENT OF THE CASE</u>

### I. The Saliers Seek Ivermectin and Hydroxychloroquine to Treat their COVID-19[1]

The Saliers both contracted COVID-19 in October 2021. App. 4, 6; R. Doc. 9, ¶¶ 8, 20. Mr. Salier fell ill first, and the Saliers initially sought monoclonal antibody treatment for him, without success. App. 4-5; R. Doc. 9, ¶¶ 8, 10-12. A clinic in Iowa informed them that treatment with monoclonal antibodies was reserved for patients in worse condition than Mr. Salier. App. 5; R. Doc. 9, ¶ 12. The Saliers inquired about treating Mr. Salier with ivermectin, but the attending physician at the Iowa clinic declined to prescribe ivermectin. *Id.*

The Saliers then obtained a telehealth appointment with a Missouri physician, Dr. Mollie James. App. 5; R. Doc. 9, ¶ 14. Dr. James provided Mr. Salier a prescription for ivermectin. App. 5; R. Doc. 9, ¶ 16. She submitted this prescription to the Walmart pharmacy in Albert Lea, Minnesota, but the Saliers allege the pharmacist there refused to fill the prescription. App. 5-6; R. Doc. 9, ¶¶ 16-19.

When Ms. Salier subsequently contracted COVID-19, Dr. James gave her prescriptions for ivermectin and hydroxychloroquine. App. 6;

---

[1] Consistent with the standard governing this Court's review of an order for dismissal under Rule 12, the facts herein are drawn from the Saliers' Amended Complaint, as well as public resources of which the district court properly took judicial notice. *See generally* Add. 10 n.4; R. Doc. 36, at 10 n.4.

Appellate Case: 22-2960     Page: 14     Date Filed: 02/08/2023 Entry ID: 5244009

R. Doc. 9, ¶ 20. The same Walmart pharmacy allegedly declined to fill those prescriptions. *Id.*

The Saliers then brought their prescriptions to a Hy-Vee pharmacy in Albert Lea. App. 6; R. Doc. 9, ¶ 21. The Hy-Vee pharmacist declined to fill those prescriptions, allegedly informing the Saliers that it was Hy-Vee's "corporate policy to refuse Ivermectin and hydroxychloroquine prescriptions to treat COVID-19." *Id.* The Hy-Vee pharmacist did, however, fill other prescriptions Dr. James had issued. *Id.*

Unable to obtain their desired prescriptions from Walmart or Hy-Vee, the Saliers turned to self-treatment with a veterinary formulation of ivermectin, after which they both "experienced rapid and significant improvement." App. 6-7; R. Doc. 9, ¶¶ 22-24. After one week of this treatment, "both had recovered sufficiently to resume their normal activities with some moderate limitations," and after two weeks, "both had resumed their normal lives." App. 7; R. Doc. 9, ¶¶ 25-26.

While the Saliers allege that they feared for Mr. Salier's life during the time they were seeking treatment, neither Mr. Salier nor Ms. Salier ever required hospitalization or other specialized medical or mental health treatment. They do not allege any physical injury or health problem resulting from their COVID-19 infections, and they do not allege any pecuniary loss.

Appellate Case: 22-2960    Page: 15    Date Filed: 02/08/2023 Entry ID: 5244009

## II. Government and Health Authority Guidance on the Treatment of COVID-19 with Ivermectin and Hydroxychloroquine During the Relevant Time

Ivermectin is an anti-parasitic agent approved by the FDA for treatment of parasites *Strongyloides stercoralis* and *Onchocerca volvulus*.[2] Hydroxychloroquine is FDA-approved for treatment and prophylaxis of malaria, and various autoimmune diseases.[3] Neither drug is FDA-approved for the treatment of COVID-19. Indeed, as the district court stated, "[a]t the time that Walmart and Hy-Vee refused to provide ivermectin and hydroxychloroquine to the Saliers, every major medical authority and government agency that had addressed the issue had said that ivermectin and hydroxychloroquine should not be used to treat COVID-19." Add. 10 & n.4; R. Doc. 36, at 10 & n.4. The district court took judicial notice of publications confirming that was the position of the U.S. Food & Drug Administration, American Medical Association, federal Centers for Disease Control, World Health Organization, and Infectious Disease Society of America. *See id.*

---

[2] Ivermectin package insert, https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=847a1dd7-d65b-4a0e-a67d-d90392059dac (last visited Feb. 2, 2023); *see Mendell v. Amgen, Inc. (In re Amgen Inc. Sec. Litig.*), 544 F. Supp.2d 1009, 1023 (C.D. Cal. 2008) (taking judicial notice of drug labels taken from government website).

[3] Hydroxychloroquine package insert, https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=84b00366-96ef-41e1-bac6-5d24acdb9e1d (last visited Feb. 2, 2023).

5

Further, in response to a "frequently asked question" whether a pharmacist may "refuse to fill a prescription for Ivermectin to treat or prevent COVID-19, the Minnesota Board of Pharmacy specifically advises that "[i]t is the legal responsibility of the pharmacist to determine the legal validity of a prescription and ensure the prescription is clinically appropriate for the patient. A pharmacist may refuse to fill or refill a prescription if, in the pharmacist's professional judgement [sic], there is a question as to the drug's safety and/or efficacy." *See* Minn. Bd. of Pharm., Frequently Asked Questions, Complaints;[4] App. 68; R. Doc. 35, at 21:11-13; *see generally* Minn. Stat. § 151.06, subd. 1(a)(1) ("The Board of Pharmacy shall have the power and it shall be its duty . . . to regulate the practice of pharmacy."). The Board notes that "pharmacists rely on various sources of clinical evidence," including "recommendations from public health agencies such as the FDA and CDC" when determining whether a prescription is appropriate for a given patient. Minn. Bd. of Pharm., *supra* n.4.

## III. Procedural History

The Saliers commenced this lawsuit in January 2022. In their Amended Complaint, the Saliers each asserted three causes of action arising from Hy-Vee's refusal to fill their prescriptions: (1) violation of their common law "right to self-determination"; (2) intentional infliction

---

[4] https://mn.gov/boards/pharmacy/public/frequentlyaskedquestions.jsp (last visited Feb. 2, 2023) ("Can a pharmacist refuse to fill a prescription for Ivermectin to treat or prevent COVID-19?").

Appellate Case: 22-2960    Page: 17    Date Filed: 02/08/2023 Entry ID: 5244009

of emotional distress; and (3) tortious interference with their contractual relations with their prescribing physician. App. 15-20; R. Doc. 9, at ¶¶ 74-105.

Hy-Vee and Walmart moved to dismiss the Saliers' claims under Fed. R. Civ. P. 12(b)(6), and also demanded the Saliers serve the affidavit of expert review required by Minn. Stat. § 145.682 because each of their claims sounds in professional malpractice and therefore requires supporting expert testimony. R. Doc. 19, at 29-32; R. Doc. 24, at 18-19. In response, the Saliers did not contest the applicability of section 145.682, acknowledged Appellees' demand for compliance, and stated that they would "secure [an affidavit of expert review] and . . . seek permission to amend the Saliers' complaint within 60 days of April 5, 2022 for the sole purpose of remedying the defect." R. Doc. 28, at 26. But the Saliers never produced the required affidavit. App. 80; R. Doc. 35, at 33:2-24.

The district court granted Hy-Vee's and Walmart's motions and dismissed the Saliers' Amended Complaint with prejudice. The district court concluded the Saliers failed to state a claim for violation of the "common law right to self-determination" because "this right does not exist in Minnesota or anywhere else." Add. 6; R. Doc. 36, at 6. The Minnesota Supreme Court dicta on which the Saliers based that claim, the district court explained, related only to patients' right to give informed consent to medical treatment, whereas the Saliers' claim

7

entails an asserted "right to force a medical provider to provide a particular type of medical treatment against his or her professional judgment." *Id.* at 7. Noting that "not a single state has recognized such a right," the district court concluded the Minnesota Supreme Court would not recognize such a right and dismissed the claim accordingly. *Id.* The court also rejected the Saliers' request (initially made in a single sentence in their brief in opposition to Appellees' motions to dismiss) to certify the issue to the Minnesota Supreme Court, as the legal infirmity of the Saliers' claim "is not a close question." *Id.* at 9 n.2.

The district court dismissed the Saliers' claim for intentional infliction of emotional distress because the pharmacists' alleged conduct was not "extreme and outrageous"—an essential element of the cause of action. *Id.* at 9-11. The court reasoned there is "nothing extreme or outrageous about a pharmacist's following the advice" of the numerous governmental and medical authorities that counseled against use of ivermectin and hydroxychloroquine to treat COVID-19. *Id.* at 10-11. The court further noted the Saliers' Amended Complaint failed to plead any facts supporting a plausible inference that the pharmacists' conduct was based on any considerations other than the overwhelming consensus of the public authorities against use of these medications to treat COVID-19, such as "political beliefs or corporate policies that were unrelated to that authority." *Id.*

Appellate Case: 22-2960     Page: 19     Date Filed: 02/08/2023 Entry ID: 5244009

Finally, the district court went on to hold that even if the Saliers had plausibly pleaded one or more claims—and they did not—Minn. Stat. § 145.682 nevertheless would require dismissal. Add. 15-20; R. Doc. 36, at 15-20. The Saliers conceded the statute applied to each of their claims, *see id.* at 17, but the district court independently confirmed its applicability, as each of the claims "requires evidence that defendants violated the standard of care applicable to pharmacists" and proof of causation would "require the Saliers to show that filling their prescriptions was consistent with the standard of care." *Id.* at 18. As the Saliers failed to demonstrate excusable neglect in their failure to serve the required affidavit, the district court denied their request for an extension of time. *Id.* at 19-20.[5]

The district court entered judgment on August 22, 2022. Add. 22; R. Doc. 37. This appeal followed.

---

[5] The District Court also dismissed the Saliers' claim for tortious interference with contractual relations, as the Saliers failed to plausibly allege that the pharmacies' conduct procured any breach, or otherwise impeded performance, of their contract with Dr. James. Add. 12-15; R. Doc. 36, at 12-15. The court also concluded the Saliers alleged nothing more than the pharmacies' refusal to deal, which does not support a tortious interference claim under Minnesota law or the Restatement (Second) of Torts. *Id.* The Saliers do not appeal the district court's dismissal of their tortious interference claim. Aplt. Br. 11.

## SUMMARY OF ARGUMENT

The district court did not err in dismissing each of the Saliers'
claims against Hy-Vee. Both claims at issue on appeal—violation of the
supposed "right to self-determination" and intentional infliction of
emotional distress ("IIED")—fail as a matter of law. As the district court
succinctly explained, the "common law right to self-determination" the
Saliers assert "does not exist in Minnesota or anywhere else." Add. 6; R.
Doc. 36, at 6. This is with good reason, because, as the district court
explained, the Saliers' asserted "right to self-determination" is not
simply the "right to do whatever you want with your own body," but
rather "the right to *force others to help you*." *Id.* at 7 (emphasis in
original).

In essence, the Saliers assert a right to compel an unwilling
healthcare provider to participate in administration of treatments of the
Saliers' choice, even contrary to the healthcare provider's judgment or
policy. No Minnesota court has ever recognized such a right—as the
Saliers concede—and nothing in Minnesota law supports or
foreshadows such a right in any way. What's more, courts in multiple
other jurisdictions have consistently rejected virtually identical claims
in which patients sought to compel unwilling healthcare providers to
administer specific medications or therapies for COVID-19.

The district court likewise did not abuse its discretion in declining
the Saliers' request to certify their "self-determination" claim to the

10

Minnesota Supreme Court. The guiding principle in considering such a request is whether the court finds itself genuinely uncertain about the proper resolution of a close question of state law. Here, the Saliers' "self-determination" claim has no support in existing Minnesota law, and compelling persuasive authority and policy considerations militate against it. There can be little doubt that the Minnesota Supreme Court would not recognize this purported right, and there is no justification to consume the parties' or that court's resources further pursuing the issue. As the district court summarized, "[t]his is not a close question." Add. 9 n.2; R. Doc. 36, at 9 n.2.

The district court likewise did not err in dismissing the Saliers' IIED claim. At the threshold, this Court should affirm the dismissal of this claim because the Saliers fail to offer any argument on appeal supporting their IIED claim against Hy-Vee. Their briefing addresses only their claim against Walmart, which is subject to different factual allegations; their decision not to address the distinct allegations against Hy-Vee results in waiver of the claim. In any event, the district court was entirely correct to conclude that Hy-Vee's decision not to fill prescriptions that numerous governmental and public health authorities said *should not* be filled cannot, as a matter of law, constitute the sort of "extreme and outrageous" conduct required to make out an IIED claim. Further, the Saliers failed to allege sufficiently severe emotional distress.

11

Finally, the district court correctly applied Minn. Stat. § 145.682, which mandates dismissal of the Saliers' claims because they failed to serve the affidavit of expert review that the statute requires. The statutory expert review requirement serves an important purpose— screening out meritless claims early in the litigation process by ensuring plaintiffs and their attorneys vet those claims at the threshold with a qualified expert. The statute applies to any claim against a healthcare provider that requires expert testimony. Notwithstanding the Saliers' attempts to characterize their claims in different terms, it applies here because both of their causes of action on appeal necessarily entail examination of the applicable professional standard of care, and proof of causation would require expert testimony to show that a pharmacist would have filled their prescriptions but for the allegedly tortious conduct. This case—in which the Saliers attack the professional judgment and conduct of pharmacists engaged in dispensing medications, but evidently cannot find a qualified expert to support their allegations—is exactly the type of meritless case to which the statute is meant to apply, and to compel prompt dismissal.

This Court should affirm the judgment of the district court in its entirety.

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY DISMISSED THE SALIERS' "SELF-DETERMINATION" CLAIM

### A. STANDARD OF REVIEW

This Court reviews *de novo* the district court's dismissal of claims under Fed. R. Civ. P. 12(b)(6). *Gillis v. Principia Corp.*, 832 F.3d 865, 871 (8th Cir. 2016). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is "plausible on its face." *Wolfchild v. Redwood Cty.,* 824 F.3d 761, 767 (8th Cir. 2016) (internal quotations and citation omitted). A claim is "plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.*

In applying the Rule 12(b)(6) standard, this Court "accepts as true all factual allegations in the light most favorable to the nonmoving party.*" Id.* (citation omitted). But "naked assertions devoid of further factual enhancement do not" suffice to state a claim, nor do "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citation omitted). "Rather, the facts alleged

Appellate Case: 22-2960    Page: 24    Date Filed: 02/08/2023 Entry ID: 5244009

must be enough to raise a right to relief above the speculative level." *Id.* (citation omitted).[6]

### B. Minnesota Law Does Not Recognize a "Right to Self-Determination" Encompassing the Right to Compel a Healthcare Provider to Provide Specific Treatments

The district court rightly dismissed the Saliers' claim for violation of their alleged "common law right to self-determination" because Minnesota law recognizes no such right. Add. 6-9; R. Doc. 36, at 6-9. Indeed, the Saliers to date have failed to identify *any* legal authority in *any* jurisdiction that recognizes such a right, nor have they identified a single case in which a plaintiff obtained relief on facts remotely similar to their allegations. Conversely, trial and appellate courts in multiple states have readily rejected claims by plaintiffs who, just like the Saliers, have sought to compel healthcare providers to administer particular COVID-19 treatments contrary to their judgment or policy. This Court should do the same.

---

[6] The Saliers cite a 1994 decision, *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994) in support of the proposition that a Rule 12(b)(6) motion "should not be granted unless it appears beyond [a] doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." Aplt. Br. 14. That is no longer the governing Rule 12 standard following the Supreme Court's 2007 *Twombly* and 2009 *Iqbal* decisions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 562-63 (2007) (stating the "'no set of facts' language" from *Conley v. Gibson*, 355 U.S. 41, 47 (1957) "has earned its retirement" and does not articulate the governing pleading standard); *Iqbal*, 556 U.S. at 678.

Appellate Case: 22-2960     Page: 25     Date Filed: 02/08/2023 Entry ID: 5244009

At the threshold, the Court should reject the Saliers' contention that the district court "erred in concluding that Minnesota does not recognize a common law right to self-determination," Aplt. Br. 14, because the Saliers concede that no Minnesota authority recognizes this supposed right. Instead, they assert their claim presents a matter of "first impression in Minnesota." Aplt. Br. i, 12; R. Doc. 28, at 8 ("Minnesota law does not supply a specific answer to whether" such a right exists). But federal courts "decline to extend the reach of [state] laws . . . as a matter of first impression," *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 519 (8th Cir. 2018), as it "is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." *Ashley Cty., v. Pfizer*, 552 F.3d 659, 673 (8th Cir. 2009) (citation omitted). Thus, there is no basis to suggest the district court erred in declining to create a new legal right the Saliers themselves insist no Minnesota court has ever recognized.

Conceding that no Minnesota authority establishes the legal right they assert, the Saliers also fail to identify any Minnesota authority that "foreshadow[s]," or supports in any way, the creation or recognition of a "right to self-determination" that would entitle them to relief here. *Cf. id.* The only case they cite in support of their claim is *Cornfeldt v. Tongen*, 262 N.W.2d 684 (Minn. 1977), a medical malpractice case in which the Minnesota Supreme Court first recognized a cause of action for a physician's failure to obtain a patient's

15

informed consent to treatment. *See id.* at 702. In the course of discussing that cause of action, the *Cornfeldt* court commented that "[o]ur society is morally and legally committed to the principle of self-determination, a corollary of which is the right of every adult of sound mind to determine what shall be done with his own body." *Id.* at 701. The Saliers seize on those dicta as the basis for their claim. But the *Cornfeldt* court's discussion concerned only the right to *refuse* medical treatment, explaining that "[p]atient self-determination is meaningful only if the patient has received sufficient information so that he can knowingly and intelligently assess the risks and benefits of treatment before giving or withholding consent." *Id.* at 702. *See also Madsen v. Park Nicollet Med. Ctr.*, 431 N.W.2d 855, 861 (Minn. 1988) (stating the "informed consent/nondisclosure doctrine" articulated in *Cornfeldt* "does not involve negligence in the administration of treatment [or] in failure to treat").

The never-before-recognized right the Saliers seek to assert is just the opposite—it is not the patient's right to *refuse* unwanted treatment, but rather would be a right to *compel* a healthcare professional to administer or assist in administration of a medical treatment, in violation of professional policy or judgment. "[S]o much for *their* right of self-determination," the district court observed, encapsulating the critical reason why the Saliers' claim is untenable: their claimed "right to self-determination" is, in reality, a right to force their own

16

preferences on others. Add. 7; R. Doc. 36, at 7. If recognized and enforced, such a right would encroach intolerably on the rights of other individuals to determine "what shall be done with [their] own bod[ies]," *Cornfeldt*, 262 N.W.2d at 701, or with their professional skills and judgment. *See* Add. 7; R. Doc. 36, at 7 ("It is one thing to say that a patient has the right to refuse medical treatment. It is quite another thing to say that a patient has the right to force a medical provider to provide a particular type of medical treatment against his or her professional judgment.").

This, surely, is why "not a single state has recognized such a right." *Id.* Indeed, courts in several states have expressly rejected claims virtually identical to the Saliers', including claims seeking to compel healthcare providers to administer ivermectin to COVID-19 patients. For example, in *Pisano v. Mayo Clinic Fla.*, 333 So.3d 782 (Fla. Dist. Ct. App. 2022), the appellate court affirmed the trial court's denial of a motion for emergency injunctive relief seeking to compel the defendant hospital to administer a cocktail of medications, including ivermectin, to a COVID patient in the intensive care unit. The appellate court considered and rejected the plaintiff's argument based on a "right of self-determination" which, in the Florida case law as in *Cornfeldt*, relates to the "right to refuse medical treatment." *Id.* at 788-89 (quoting *In re Guardianship of Browning*, 568 So.2d 4, 10 (Fla. 1990)). This authority, the appellate court explained, "provides no legal basis to

17

usurp the medical judgments of treating physicians and compel them to administer medical treatment against their will." *Id.* at 789. Numerous appellate courts in other states have reached the same conclusion. *See, e.g.*, *Shoemaker v. UPMC Pinnacle Hosps.*, 283 A.3d 885, 895 (Pa. Super. Ct. 2022) (reversing preliminary injunction requiring hospital to permit non-credentialed physicians to administer ivermectin to COVID patient, as "[t]here is no precedent or applicable law to support the proposition that a patient has a legal right to demand a particular medical treatment . . . ."); *Gahl v. Aurora Health Care, Inc.*, 977 N.W.2d 756, 775 (Wis. Ct. App. 2022) (reversing preliminary injunction requiring hospital to administer ivermectin, as "a court lacks the legal authority to force a private medical facility to provide treatment that it concludes is below the standard of care"); *Abbinanti v. Presence Cent. & Suburban Hosps. Network*, 191 N.E.3d 1265, 1272 (Ill. App. Ct. 2021) (affirming denial of temporary restraining order); *Tex. Health Huguley, Inc. v. Jones*, 637 S.W.3d 202, 207 (Tex. App. 2021) (vacating preliminary injunction); *DeMarco v. Christiana Care Health Servs., Inc.*, 263 A.3d 423, 426 (Del. Ch. 2021) (denying motion for preliminary injunction and concluding that "[p]atients, even gravely ill ones, do not have a right to a particular treatment").

In sum, the Saliers concede that no Minnesota court has ever recognized a "right to self-determination" supporting the claim they assert. *Cornfeldt* in no way supports recognition of such a right, and no

18

subsequent court has ever suggested it does. Indeed, the district court here noted that the dicta from *Cornfeldt* on which the Saliers rely "has not been cited a single time by either the Minnesota Supreme Court or the Minnesota Court of Appeals since it was published 45 years ago." Add. 8-9; R. Doc. 36, at 8-9. And not only does the Saliers' claim lack affirmative support in Minnesota law, but appellate courts in multiple other jurisdictions have universally rejected similar claims for the same essential reason—no law entitles a person to compel an unwilling healthcare professional to administer specific treatments against the professional's judgment or policy. This Court should not hesitate to affirm the district court's judgment.

## C. Creating a New Right to Compel Specific Medical Treatment Conflicts with Positive Minnesota Law and Good Policy

The Saliers seek to distinguish their "self-determination" claim from the overwhelming body of authority discussed above by characterizing the pharmacists' role as merely "ministerial," suggesting the pharmacists were obligated to fill the Saliers' prescriptions without any exercise of professional judgment. *See* Aplt. Br. 10, 11, 18, 28, 29. Again, the Saliers fail to cite any legal authority supporting their position. Again, governing authority affirmatively contradicts their argument.

In contending the Hy-Vee pharmacist had "a ministerial duty" to fill their prescriptions, Aplt. Br. 29, the Saliers ignore Minnesota law

19

governing the practice of pharmacists.[7] Pursuant to Minnesota statute and regulations, pharmacists in Minnesota must "exercise . . . professional judgment" in performing a "prospective drug utilization review" when presented with a prescription. Minn. Stat. § 151.06, subd. 1(b). "Prospective drug review" means "a review of a patient's drug therapy record and prescription drug order prior to the time of dispensing for purposes of promoting therapeutic appropriateness." Minn. R. 3100.011, subd. 12 (2022). In accordance with its statutory mandate, the Minnesota Board of Pharmacy has promulgated rules providing that "[u]pon receiving a prescription drug order . . . a pharmacist shall examine the patient's profile record and conduct a prospective drug review to identify" various potential clinical concerns, including "overutilization or underutilization," "drug-disease contraindications," "incorrect drug dosage or duration of drug treatment," and "clinical abuse or misuse." Minn. R. 6800.3110, subd. 4 (2022). The Board of Pharmacy has even published guidance specifically

---

[7] The Saliers cite two cases in connection with their argument that the pharmacists' role was ministerial, *Mumms v. Mornson*, 708 N.W.2d 475 (Minn. 2006), and *State v. Whipple*, 173 N.W. 801 (Minn. 1919). Neither case is applicable here. *Mumms* is a civil rights case that addresses "ministerial" acts in the context of the doctrine of common law official immunity. 708 N.W.2d at 491-92. It has no application to pharmacists or the professional judgment and conduct of healthcare providers more generally. *Whipple* is a century-old criminal case that discusses interpretation of the terms "prescribe" and "furnish" in a federal statute. 173 N.W. at 802. It likewise has no application here.

Appellate Case: 22-2960     Page: 31     Date Filed: 02/08/2023 Entry ID: 5244009

advising that a pharmacist may decline to dispense ivermectin to treat COVID-19, reaffirming that "[i]t is the legal responsibility of the pharmacist to determine the legal validity of a prescription and ensure the prescription is clinically appropriate for the patient. A pharmacist may refuse to fill or refill a prescription if, in the pharmacist's professional judgement [sic], there is a question as to the drug's safety and/or efficacy." Minn. Board of Pharmacy, *supra* n.4. This administrative guidance from the Board of Pharmacy was, as the district court recognized, consistent with the consensus expressed by federal agencies and leading healthcare organizations that "ivermectin and hydroxychloroquine should not be used to treat COVID-19." Add. 10 & n.4; R. Doc. 36, at 10 & n.4.

Thus, far from a "ministerial" obligation to fill all prescriptions without question, applicable law and regulations direct pharmacists to exercise their own professional judgment to help ensure the safety and clinical appropriateness of a physician's prescription for a particular patient. Indeed, requiring pharmacists to dispense all prescriptions without question would obviate the need for pharmacists at all. And the Saliers recognize this, fundamentally contradicting their own arguments about the supposedly "ministerial" nature of the pharmacists' role when they concede that "[p]harmacists play a vital role in providing a second set of eyes capable of detecting contraindications and error." Aplt. Br. 19. But the Saliers offer no

21

analysis or principled basis to distinguish between scenarios involving "contraindications" or "error," and scenarios in which they contend a pharmacist must dispense a medication in ministerial fashion. If embraced, their "right to self-determination" would be boundless.

Because recognition of the Saliers' "self-determination" claim would conflict intolerably with positive state law, the principle that federal courts will not "expand state law in ways not foreshadowed by state precedent" is particularly applicable here. *Ashley Cty.*, 552 F.3d 659 at 673. And even setting aside the directives of state law, recognizing a right such as the Saliers assert would be bad jurisprudence, radically reshaping relationships between patients and healthcare providers by allowing patients to control the conduct of physicians, pharmacists, and others—including by overriding those professionals' best judgment—based on a "right to self-determination" with no evident limiting principle. As the district court rightly observed:

> [T]he Saliers ask this Court to recognize a sweeping new right—one that has never been recognized by any state— that would have profound implications for a wide range of controversial issues . . . and that would completely upend the legal regulation of doctors, dentists, physician assistants, nurses, pharmacists, and other health-care professionals.

Add. 8; R. Doc. 36, at 8. The district court was correct; recognition of such a right would have severe, wide-ranging consequences.

Neither law nor good policy supports the Saliers' "self-determination" claim. The district court did not err in dismissing it. This Court should affirm.

## II. The District Court Did Not Abuse Its Discretion in Declining to Certify the Saliers' "Self-Determination" Claim to the Minnesota Supreme Court

After Hy-Vee and Walmart moved to dismiss, the Saliers sought to rescue their "self-determination" claim by asking the district court, in a single sentence in their opposition brief, to certify to the Minnesota Supreme Court the question of whether their claim states a legally cognizable cause of action. *See* R. Doc. 28, at 8. The district court declined, as it was "confident that the Minnesota Supreme Court would not recognize the 'right to self-determination' asserted by the Saliers." Add. 9 & n.2; R. Doc. 36, at 9 & n.2. This Court should do the same. As the district court succinctly stated, "[t]his is not a close question." *Id.*

### A. Standard of Review

This Court reviews a district court's application of state law *de novo* and its decision not to certify a question to a state supreme court for an abuse of discretion. *Godfrey v. State Farm Fire & Cas. Co.*, 11 F.4th 601, 602-03 (8th Cir. 2021). "The decision whether to certify a question to a state supreme court 'is by no means "obligatory" merely because state law is unsettled; the choice instead rests in the sound discretion of the federal court.'" *Saunders v. Thies*, 38 F.4th 701, 717

(8th Cir. 2022) (*quoting McKesson v. Doe*, 141 S. Ct. 48, 51 (2020) (*per curiam*)).

**B.** **This Case Does Not Present a "Close Question," and the District Court Rightly Declined to Certify the Saliers' Claim to the Minnesota Supreme Court**

Pursuant to statute, the Minnesota Supreme Court "may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or [Minnesota] statute." Minn. Stat. § 480.065, subd. 3. As indicated above, the decision whether to certify a question to a state supreme court is commended to the federal court's discretion. The certification power is to be used sparingly—even when presented with a "difficult state law question[]," a federal court should not "mechanically" certify the issue to the state court. *Hatfield v. Bishop Clarkson Mem'l. Hosp.*, 679 F.2d 1258, 1261 n.4 (8th Cir. 1982). Ultimately, "[t]he most important consideration" for the federal court "is whether the reviewing court finds itself genuinely uncertain about a question of state law." *Johnson v. John Deere Co., Div. of Deere & Co.*, 935 F.2d 151, 153 (8th Cir. 1991) (citation omitted). Absent a "close" question of state law, a "federal court should determine all the issues before it." *Id.* at 154.

Here, the question is not remotely close for all the reasons explained above. Neither *Cornfeldt* nor any other Minnesota case

24

supports the "right to self-determination" the Saliers assert. Recognition of that right would squarely conflict with Minnesota statutory and regulatory law, and numerous courts in other states have expressly rejected the same claim for persuasive reasons—reasons that are every bit as applicable in Minnesota as they were in those other jurisdictions.

In support of their certification request, the Saliers emphasize that their "self-determination" claim presents "an issue of first impression" in Minnesota. Aplt. Br. 20. But that alone is not a sufficient justification to certify the matter to the Minnesota Supreme Court. This Court and others have readily denied requests for certification where, as here, the "issues in th[e] case were not close enough to justify certification"—even though "issues of first impression under state law were involved." *Johnson*, 935 F.2d at 153-54; *see also Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 610 (6th Cir. 2012) (declining to certify claim not previously recognized by Michigan courts, as "the federal courts generally will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks"); *Travelers Indem. Co. v. DiBartolo*, 171 F.3d 168, 169 n.1 (3d Cir. 1999) (declining to certify issue of first impression to state supreme court, as the "issue was neither sufficiently important nor sufficiently difficult to command the attention of that tribunal").

If presentation of a matter of first impression alone were enough to require certification to state courts, federal courts would certify all manner of novel, outlandish, and frivolous claims. That is not the law. Rather, federal courts exercising diversity jurisdiction routinely resolve questions of state law—even where state courts have not squarely addressed the issue—by consulting the full range of sources upon which common law courts traditionally rely, including "relevant state precedent, analogous decisions, considered dicta, and any other reliable data"—to "determine how the [relevant state supreme court] would construe [the state's] law." *Ashley Cty.*, 552 F.3d at 665. Here, the district court carefully analyzed Minnesota law, persuasive authority from other jurisdictions, and compelling policy considerations to reach the conclusion that the Saliers' "self-determination" claim is not viable. It is not a "close question" that the Minnesota Supreme Court would decline to recognize such a claim. The appropriate resolution is dismissal, not certification.

Finally, the Saliers assert that denial of their certification request constitutes "forum punishment"; they contend they "should not be deprived the right to have this claim decided by the Minnesota Supreme Court" simply because "they chose to proceed by way of diversity jurisdiction in federal court." Aplt. Br. 21. But this Court has embraced "the basic principle that federal courts 'should be slow to honor a request for certification from a party who chose to invoke federal

26

jurisdiction.'" *Smith v. SEECO, Inc.*, 922 F.3d 406, 412 (8th Cir. 2019) (quoting 17A Wright, et al., Fed. Prac. & Proc. Juris § 4248 (3d ed.)). The Saliers *had* the right to bring their claim before the Minnesota courts—they could have filed this lawsuit in state court, but chose the federal forum instead. And they made their cursory request for certification to the Minnesota Supreme Court only after Hy-Vee and Walmart moved to dismiss their claims. Far from being subject to "forum punishment," it is the Saliers who are engaged in procedural and forum-based gamesmanship, seeking certification as a means to preserve the claim only after its merit was called into serious question. These circumstances strongly militate against certification. *See id.*; *cf. Perkins v. Clark Equip. Co.*, 823 F.2d 207, 210 (8th Cir. 1987) ("The practice of requesting certification after an adverse judgment has been entered should be discouraged. Otherwise, the initial federal court decision will be nothing but a gamble with certification sought only after an adverse decision."); *Berrington*, 696 F.3d at 610 (denying certification request raised "as an afterthought and for the first time here on appeal").

This Court, like the district court, should deny the Saliers' certification request.

27

## III. THE DISTRICT COURT DID NOT ERR IN DISMISSING THE SALIERS' CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The district court rightly dismissed the Saliers' claim for intentional infliction of emotional distress ("IIED") for failure to plausibly plead an essential element of the cause of action—that the Hy-Vee pharmacist's refusal to fill their prescriptions constituted "extreme and outrageous" conduct, meaning behavior so "'atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community.'" Add. 9; R. Doc. 36, at 9 (quoting *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 439 (Minn. 1983)).

The Saliers have waived their IIED claim against Hy-Vee on appeal by failing to make any argument in support of it. Regardless, the district court did not err. This Court should affirm.

### A. The Saliers Have Waived their IIED Claim Against Hy-Vee By Failing to Support the Claim on Appeal

The Saliers have waived their IIED claim against Hy-Vee by failing to make any argument to this Court in support of the claim. The Saliers' briefing on their IIED claim addresses only the alleged conduct of the Walmart pharmacist and ignores any analysis of the Saliers' factual allegations against Hy-Vee. *See* Aplt. Br. 23-27. This is not a

28

mere technicality—the Saliers' allegations against Walmart are factually distinct from their allegations against Hy-Vee.[8]

The Saliers' arguments against Walmart on appeal are framed around an alleged conversation between the Walmart pharmacist and the Saliers' prescribing physician. *See id.* at 25-26. In contrast, the Saliers do not allege any communication between Dr. James and the Hy-Vee pharmacist. Add. 6, 17-19; R. Doc. 9, ¶¶ 21, 84-95. Their relevant allegations against Hy-Vee are merely that (1) the pharmacist refused to fill their ivermectin and hydroxychloroquine prescriptions, and (2) the pharmacist stated the refusal was based on "corporate policy." *Id.* at ¶ 21. On appeal, they do not even attempt to explain how these specific allegations could state a viable IIED claim against Hy-Vee.[9]

---

[8] The sub-heading on this portion of the Saliers' brief refers specifically and exclusively to "Counts Three and Four – The Saliers' Claims Against Walmart," and begins (and ends) with "discussion of the Saliers' claims against Walmart." Aplt. Br. 24. The Saliers' IIED claims against Hy-Vee were pleaded in separate counts in their Amended Complaint—Counts Nine and Ten. App. 17-19; R. Doc. 9, ¶¶ 84-95. It is accordingly difficult to see their failure to address the IIED claims against Hy-Vee as anything other than knowing and intentional waiver.

[9] None of this is to suggest the Saliers' allegations against Walmart come remotely close to stating a claim; they do not. But the allegations against Walmart and Hy-Vee are different, and the Saliers on appeal chose to focus their arguments on the specific allegations that are unique to Walmart, while eschewing any discussion of the allegations about Hy-Vee.

29

It is well established that "[c]laims not raised in an opening brief are deemed waived." *Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008). Having failed to support their IIED claim against Hy-Vee with any meaningful argument addressing their factual allegations against Hy-Vee, the Saliers waived the claim. *Id.*; *Carpenters' Pension Fund of Ill. v. Neidorff*, 30 F.4th 777, 785-86 (8th Cir. 2022) (affirming dismissal for failure to plead demand futility, in part "because Appellants have failed to argue it on appeal"); *Chay-Velasquez v. Ashcroft,* 367 F.3d 751, 756 (8th Cir. 2004) (noting claims not meaningfully argued in opening brief are waived).

### B. The District Court Correctly Dismissed the IIED Claim Against Hy-Vee for Failure to Plead the Essential Element of "Extreme and Outrageous" Conduct

To state a claim for intentional infliction of emotional distress under Minnesota law, the Saliers were required to plausibly allege facts satisfying four elements: "'(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.'" *McDonald v. City of St. Paul*, 679 F.3d 698, 708 (8th Cir. 2012) (quoting *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003)). This Court and the Minnesota courts have cautioned that an "intentional infliction of emotional distress claim is 'sharply limited to cases involving particularly egregious facts.'" *Id.* (quoting *Langeslag*, 664 N.W.2d at 864). "Conduct is 'extreme and outrageous' when it is 'so

30

atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community.'" *Langeslag*, 664 N.W.2d at 865 (quoting *Hubbard*, 330 N.W.2d at 439). Courts routinely dismiss IIED claims at the pleading or summary judgment stage where the alleged facts, even accepted as true, describe behavior that "does not constitute extreme and outrageous conduct as a matter of law." *McDonald*, 679 F.3d at 708-09 (affirming summary judgment dismissing IIED claim); *see Gillis*, 832 F.3d at 874-75 (affirming Rule 12 dismissal of IIED claim under Missouri law for failure to plead extreme conduct); *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1067-69 (8th Cir. 2021) (same under Nebraska law); *Hubbard*, 330 N.W.2d at 440 (reversing jury verdict in favor of plaintiff on IIED claim, concluding "as a matter of law" that "trial court erred in permitting the jury to find that [defendant]'s conduct was sufficiently outrageous, or that [plaintiff]'s emotional injury was sufficiently severe, to constitute intentional infliction of emotional distress"); *Zean v. Mary T., Inc.*, No. A18-1586, 2019 Minn. App. Unpub. LEXIS 341, at *13-14 (Minn. Ct. App. Apr. 22, 2019) (affirming Rule 12 dismissal of IIED claim for failure to plead sufficiently extreme and outrageous conduct).

Here, the district court did not err in dismissing the Saliers' IIED claim. As the court explained, "[a]t the time that Walmart and Hy-Vee refused to provide ivermectin and hydroxychloroquine to the Saliers, every major medical authority and government agency that had

31

addressed the issue had said that ivermectin and hydroxychloroquine should not be used to treat COVID-19." Add. 10; R. Doc. 36, at 10. "Obviously," the district court observed, "there is nothing extreme or outrageous about a pharmacist's following the advice of these authorities." *Id.* at 10-11. The district court was correct. As a matter of law—indeed, by definition—a pharmacist does not engage in "extreme" or "outrageous" conduct—defined as conduct "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community"—by simply following the guidance of public health authorities. *Langeslag*, 664 N.W.2d at 865.[10] *See also K.A.C. v. Benson*, 527 N.W.2d 553, 560 (Minn. 1995) (rejecting IIED claim based on doctor's actions in compliance with state medical board guidance).

This Court and the Minnesota Supreme Court have both readily dismissed IIED claims based on alleged conduct far more offensive and egregious than a pharmacist declining to fill a prescription in

---

[10] The district court took "judicial notice that these authorities existed." Add. 10 n.4; R. Doc. 36, at 10 n.4 (citing *Mulvenon v. Greenwood*, 643 F.3d 653, 656-57 (8th Cir. 2011) and *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793 (8th Cir. 2016) (court may take judicial notice of government websites)). The Saliers have not challenged the appropriateness of that judicial notice or the authenticity of the sources. And while the Saliers may doubt the wisdom of the official guidance, any such dispute is irrelevant here. Whether or not the authorities were ultimately correct about the safety or efficacy of the medications at issue, a pharmacist cannot be said to act in an "extreme or outrageous" manner by following the guidance of leading governmental and medical authorities—even if that advice may later be shown to be debatable or even scientifically invalid.

32

accordance with public health guidance and alleged "corporate policy." App. 6; R. Doc. 9, ¶ 21. In *Langeslag*, for example, the Minnesota Supreme Court reversed the judgments of the district court and court of appeals denying the defendants' motion for judgment as a matter of law, overturning a jury verdict in favor of the plaintiff on an IIED claim. *See* 664 N.W.2d at 865-68. The jury's finding was supported by facts showing the defendant repeatedly "made false reports to the police" about the plaintiff, "repeatedly threatened [the plaintiff] with legal action," and "frequently engaged [the plaintiff] in loud workplace arguments." *Id.* at 865. The court held that "as a matter of law this conduct is not extreme and outrageous conduct." *Id.*; *see also Hubbard*, 330 N.W.2d at 439-40 (holding conduct that "may have made [the plaintiff] feel harassed, and may even have been intended to harass," still did not constitute sufficiently "extreme and outrageous conduct" sufficient to support IIED claim).

The Saliers argue on appeal that Hy-Vee conceded it acted "intentionally and recklessly in endangering the Saliers' health and lives" by declining to contest their pleading of the second element of the cause of action for IIED in its motion to dismiss. Aplt. Br. 23. The Court should not be misled by this attempted sleight of hand. The second element of the cause of action requires conduct that was "intentional *or* reckless"—phrased in the disjunctive. *Langeslag*, 664 N.W.2d at 864 (emphasis added). That Hy-Vee chose not to attack this element in its

Appellate Case: 22-2960     Page: 44     Date Filed: 02/08/2023 Entry ID: 5244009

motion to dismiss means nothing more than that the Saliers' allegations describe conduct that was intentional, not accidental. In no way does it constitute a concession that Hy-Vee acted "recklessly" or "endanger[ed] the Saliers' health and lives."

Finally, the Saliers argue vociferously on appeal that Walmart's conduct—and perhaps by implication Hy-Vee's—met the extraordinarily high "extreme and outrageous" threshold because the pharmacists supposedly "substituted corporate judgments for Dr. James' reasoned medical judgments" and based their decisions "on political conclusions rather than sound medical judgment." Aplt. Br. 25. But these arguments carry no weight because they are not supported by a single factual allegation in the Saliers' Amended Complaint. The Saliers' sole factual allegation related to Hy-Vee's alleged corporate policy is that the Hy-Vee pharmacist "told them that it was [Hy-Vee's] corporate policy to refuse Ivermectin and hydroxychloroquine prescriptions to treat COVID-19." Add. 6; R. Doc. 9, ¶ 21. They do not allege that policy was made on the basis of "political" considerations or any improper grounds, or that it was made without consulting medical experts. Indeed, they make no allegations at all about the details of the alleged corporate policy or the reasons for it.

The Saliers' Amended Complaint thus failed to provide any plausible basis to infer that Hy-Vee's alleged corporate policy was based on anything other than reasonable and appropriate considerations—

34

including the overwhelming chorus of public health authorities discussed above. The district court correctly articulated this point, explaining that "nothing alleged by the Saliers makes plausible their claim that the reason the pharmacists at Walmart and Hy-Vee refused to fill their prescriptions was not that doing so would contravene the overwhelming weight of medical authority, but because of political beliefs or corporate policies that were unrelated to that authority." Add. 11; R. Doc. 36, at 11.[11] Rhetoric and arguments of counsel cannot substitute for well-pleaded factual allegations supporting a plausible inference of liability. *See, e.g., Shock v. Tester*, 405 F.2d 852, 854 (8th Cir. 1969) ("In considering whether the District Court erred, we must disregard those contentions of the plaintiff made in brief or oral argument, however strongly felt and urged, which were not set forth in his complaint."); *Hawse v. Page*, 7 F.4th 685, 691 (8th Cir. 2021) ("[A]ppellants could not amend their complaint, or supplement insufficient factual allegations, in a brief filed in opposition to a motion to dismiss."). The Saliers' Amended Complaint failed to make any plausible factual allegations suggesting Hy-Vee's alleged corporate

---

[11] The district court gave the Saliers' counsel ample opportunity at oral argument to articulate the plausible factual basis for his suggestion that Hy-Vee's alleged corporate policy was "put in place by suits, not white coats." App. 66; R. Doc. 35, at 19:9-10. The district court specifically asked the Saliers' counsel, "what makes you think they wouldn't have consulted doctors, medical people, before making that decision?" *Id.* at 19:20-22. The Saliers' counsel could point to no responsive facts. *Id.* at 20:3-28:17.

Appellate Case: 22-2960    Page: 46    Date Filed: 02/08/2023 Entry ID: 5244009

policy was based on anything other than appropriate considerations. Their IIED claim fails for this reason among many others.

## C. The Saliers' IIED Claim Fails for the Independent Reason That They Failed to Plausibly Allege Sufficiently Severe Emotional Distress

In addition to their failure to allege extreme and outrageous conduct, the Saliers' IIED claim fails as a matter of law because the emotional distress they claim to have suffered falls far short of the extremely high threshold Minnesota law requires.[12]

To state a claim for intentional infliction of emotional distress, a plaintiff must allege facts plausibly demonstrating emotional distress "so severe that no reasonable person could be expected to endure it." *Hubbard*, 330 N.W.2d at 440 (citing Restatement (Second) of Torts § 46 cmt. j (1965)). The required degree of emotional distress is sufficiently high that Minnesota courts dismiss IIED claims even when a plaintiff demonstrates distress with physical manifestations requiring medical treatment. *See Langeslag,* 664 N.W.2d at 868-69 (concluding plaintiff did not "meet a high threshold of proof regarding the severity of mental distress" described as stomach pain, alopecia, weight loss, and

---

[12] Hy-Vee moved to dismiss the Saliers' IIED claim on this ground, *see* R. Doc. 19, at 23, but the district court did not need to reach the issue because the Saliers' failure to plead extreme and outrageous conduct was already fatal to their claim. Regardless whether the district court considered the issue, this Court "may affirm the judgment on any basis supported by the record." *Spirtas Co. v. Nautilus Ins. Co.*, 715 F.3d 667, 670 (8th Cir. 2013) (citation omitted).

Appellate Case: 22-2960    Page: 47    Date Filed: 02/08/2023 Entry ID: 5244009

impotence); *Hubbard*, 330 N.W.2d at 440 (concluding depression, high blood pressure, skin rash, and stomach disorders were insufficient to support severe emotional distress); *Eklund v. Vincent Brass & Aluminum Co.*, 351 N.W.2d 371, 379 (Minn. Ct. App. 1984) (affirming summary judgment dismissing IIED claim where plaintiff consulted physician, suffered humiliation, embarrassment, lost sleep, unsteady nerves, and depression).

The Saliers generally allege that Hy-Vee's refusal to fill their ivermectin and hydroxychloroquine prescriptions caused them to "fear for [Mr. Salier's] life" and "agonize" over their health. App. 17, 19; R. Doc. 9, ¶¶ 88, 95. But they do not allege any facts plausibly showing emotional distress "so severe that no reasonable person could be expected to endure it." *Hubbard*, 330 N.W.2d at 440. They do not allege any physical or specific psychological consequences of their distress. They do not allege that they sought any medical or mental health treatment. They do not allege any facts showing a concrete impact on their lives. *Cf. id.* ("Despite [plaintiff's] testimony about his problems, [plaintiff] never missed work, never filed a claim for workers' compensation, and never saw a doctor . . ."). Neither of the Saliers was ever hospitalized. And the Saliers affirmatively allege that two weeks after self-treating with ivermectin, "both had resumed their normal lives." App. 7; R. Doc. 9, ¶ 26.

Appellate Case: 22-2960     Page: 48     Date Filed: 02/08/2023 Entry ID: 5244009

Even taken as true, the Saliers' allegations fall far short of the devastating degree of emotional distress required to state an IIED claim under Minnesota law.

## IV. THE DISTRICT COURT DID NOT ERR IN DISMISSING THE SALIERS' CLAIMS UNDER MINN. STAT. § 145.682

The district court dismissed all of the Saliers' claims on the alternative and independent basis that the Saliers failed to serve the affidavit of expert review required by Minn. Stat. § 145.682. The Saliers conceded the statute applies to each of their causes of action, and failed to show excusable neglect for their failure to serve the required affidavit. The statute therefore mandates dismissal. *See* Add. 17-20; R. Doc. 36, at 17-20. This Court should affirm.

### A. The Statutory Requirement and Standard of Review

Minnesota law requires that a plaintiff who asserts against a healthcare professional any claim "in which 'expert testimony is necessary to establish a prima facie case' . . . must serve two affidavits of expert review on the defendant at designated times." *Flores v. United States*, 689 F.3d 894, 899-900 (8th Cir. 2012) (citing Minn. Stat. § 145.682). The "first [affidavit] must be served simultaneously with the summons and complaint." *Id.* It must be signed by the plaintiff's attorney, and must state that "the facts of the case have been reviewed by the plaintiff's attorney with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants

38

deviated from the applicable standard of care and by that action caused injury to the plaintiff." Minn. Stat. § 145.682, subd. 3. Failure to serve this affidavit within 60 days after demand "results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case." § 145.682, subd. 6.

"The Minnesota legislature enacted Minn. Stat. § 145.682 for the purpose of eliminating nuisance medical malpractice lawsuits by requiring plaintiffs to file affidavits verifying that their allegations of malpractice are well-founded." *Stroud v. Hennepin Cty. Med. Ctr.*, 556 N.W.2d 552, 555 (Minn. 1996). In keeping with that legislative purpose, "Minnesota courts require strict compliance with the procedural requirements set forth in" the statute. *Flores*, 689 F.3d at 900 (citing *Broehm v. Mayo Clinic Rochester*, 690 N.W.2d 721, 726 (Minn. 2005)).[13]

A plaintiff's failure to submit an affidavit of expert review may be excused—and dismissal may be avoided—"only if: (1) expert testimony is *not* needed to establish negligence; or (2) if the plaintiff shows excusable neglect in failing to timely serve the affidavits." *Id.* (citing Minn. Stat. § 145.682, subd. 2, 4). "Otherwise, the consequence of

---

[13] Federal courts regard the requirements of the statute as substantive Minnesota law, such that it applies with full force in a diversity case. *See Flores*, 689 F.3d at 899-900; *Ellingson v. Walgreen Co.*, 78 F. Supp. 2d 965, 968 (D. Minn. 1999) ("The federal courts, in the *Erie* context, have consistently considered Minn. Stat. § 145.682 as substantive.").

Appellate Case: 22-2960    Page: 50    Date Filed: 02/08/2023 Entry ID: 5244009

noncompliance is dismissal with prejudice." *Id.* (citing § 145.682, subd. 6).

This Court reviews *de novo* the district court's interpretation and application of the statute to the claims at issue. *Id.* The district court's denial of a plaintiff's request to extend the statutory deadlines is reviewed for abuse of discretion. *Id.*; *see also Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 426 (Minn. 2002).

## B. The District Court Correctly Concluded That All of the Saliers' Claims Require Expert Testimony and Are Subject to the Statutory Requirement

The district court did not err in concluding that the statutory affidavit requirement applies to all of the Saliers' causes of action.

### 1. The Saliers Conceded the Statute Applies

At the threshold, the district court correctly concluded that the Saliers conceded the statute's applicability. *See* Add. 17-19; R. Doc. 36, at 17-19. Both Hy-Vee and Walmart expressly demanded the Saliers' compliance with the statute in their respective motions to dismiss. *See* R. Doc. 19, at 31; R. Doc. 24, at 19; *Judah v. Ovsak*, 550 F. Supp. 3d 687, 707 (D. Minn. 2021) (noting defendant may state affidavit demand in motion) (citing *Brown-Wilbert, Inc. v. Copeland Buhl & Co. P.L.L.P.*, 732 N.W.2d 209, 215 (Minn. 2007)). The Saliers did not contest the applicability of section 145.682 in their responsive brief. Instead, they "acknowledge[d]" the failure to serve the required affidavit and indicated "[t]hey will secure such an affidavit and will seek permission

40

to amend [their] complaint within 60 days of" the defendants' demand. R. Doc. 28, at 26.[14]

Now, the Saliers contend for the first time on appeal that the statute does not apply because their claims supposedly do not require supporting expert testimony.[15] *See* Aplt. Br. 28-29. But the Saliers "waived that argument by raising it for the first time on appeal." *Ascente Bus. Consulting, LLC v. DR myCommerce*, 9 F.4th 839, 845 (8th Cir. 2021).

## 2. The District Court Correctly Applied the Statute Even Absent the Saliers' Waiver

Regardless of the Saliers' waiver, the district court rightly concluded that each of the Saliers' claims against Hy-Vee required compliance with Minn. Stat. § 145.682 because each claim "requires

---

[14] The Saliers' district court brief expressed that these statements were made "[w]ithout conceding that [their claims] are pure malpractice claims to the extent that such an assertion is contradicted herein." R. Doc. 28, at 26. But nowhere in their brief did they attempt to "contradict[]" that their claims are subject to the statute. The district court directly stated to the Saliers counsel: "In your brief you conceded you were supposed to file this affidavit, and you said you would file it within 60 days of April 5th. Was that affidavit served?" App. 80; R. Doc. 35, at 33:5-7. Counsel's simple answer was "No, Your Honor." *Id.* at 33:8. Counsel did not contest the applicability of the statute; he simply moved (belatedly) for additional time to supply the required affidavit. *See id.* at 33:16-24.

[15] Their argument in this regard directly contradicts their counsel's statements below that this litigation "seems to be setting up a battle of the experts" and would require evidence regarding the "standard of care." App. 56; R. Doc. 35, at 9:9-10:2.

41

evidence that defendants violated the standard of care applicable to pharmacists," and the Saliers also would require expert testimony to show causation. Add. 18; R. Doc. 36, at 18. The district court did not err.

The statutory affidavit requirement applies in any action against a healthcare provider alleging "malpractice, error, mistake, or failure to cure, whether based on contract or tort" that "includes a cause of action as to which expert testimony is necessary to establish a prima facie case." Minn. Stat. § 145.682, subd. 2. Expert testimony is required unless "the matters to be proved fall within an area of common knowledge and developing lay comprehension of medical techniques." *Chizmadia v. Smiley's Point Clinic*, 873 F.2d 1163, 1165 (8th Cir. 1989) (citation omitted). It is this substantive requirement for expert testimony that controls the analysis—not the labels or descriptions the plaintiff may attach to his or her claims. *See Paulos v. Johnson*, 502 N.W.2d 397, 400 (Minn. Ct. App. 1993) ("The statute governs any allegations of malpractice, mistake or failure to cure."); *C. C. v. Fairview Health Servs.*, No. A09-2320, 2010 Minn. App. Unpub. LEXIS 754, at *4, *7 (Minn. Ct. App. Aug. 3, 2010) (holding statute applies where conduct at issue "necessarily flows from a therapeutic relationship" and "implicate[s] medical and professional judgment"); *cf. D.A.B. v. Brown,* 570 N.W.2d 168, 171 (Minn. Ct. App. 1997) (applying statute of limitations for medical malpractice to claims against physician characterized as breach of fiduciary duty, as analysis of the

42

allegations "was dependent on the medical diagnosis, treatment, and care of the patients"). Cases against healthcare providers *not* requiring an affidavit of expert review are "rare and exceptional." *Kolosky v. Woodwinds Hosp.*, 2009 Minn. App. Unpub. LEXIS 1249, *4 (Dec. 1, 2009) (citing *Tousignant v. St. Louis Cty.*, 615 N.W.2d 53, 58 (Minn. 2000)).

Here, as the district court explained, all of the Saliers' claims against Hy-Vee require expert testimony because the claims are grounded on allegations "that defendants lacked a 'reasonable medical or scientific basis for declining to fill' the prescriptions" or "that defendants substituted their own opinions for 'Dr. James' reasoned and qualified judgment' and 'knowledge, skills, ability, and experience.'" Add. 18; R. Doc. 36, at 18 (quoting Am. Compl.). Their claims necessarily entail the allegation that the Hy-Vee pharmacist's decision not to fill their ivermectin and hydroxychloroquine prescriptions was inappropriate, unreasonable, or—in the case of the IIED claim— "extreme and outrageous." Assessment of that allegation calls for application of medical or pharmaceutical expertise beyond the ken of lay jurors. *See e.g.*, *Kloss v. Wal-Mart Stores, Inc.*, No. 11-cv-3382, 2013 U.S. Dist. LEXIS 9433, at *25-38 & n.2 (D. Minn. Jan. 24, 2013) (applying expert review statute to pharmacist conduct); *Linden v. Siemers*, No. A11-780, 2012 Minn. App. Unpub. LEXIS 26, at *6-7 (Minn. Ct. App. Jan. 9. 2012) (concluding negligence claims against

43

pharmacy staff require expert testimony). Similarly, the Saliers would need expert testimony to establish causation, which would require a showing "that their prescriptions would have been filled but for the allegedly tortious conduct" of the pharmacists. Add. 18; R. Doc. 36, at 18.

On appeal, the Saliers suggest section 145.682 should not apply to their claims because they "did not sue individual pharmacists for breaching their duty of care in the performance of a discretionary act." Aplt. Br. 28. But their claims necessarily implicate the standard of care, as explained above, and the fact that they sued Hy-Vee instead of an individual is irrelevant—the statute applies to any claims against "all persons *or entities* providing health care," Minn. Stat. § 145.682, subd. 1 (emphasis added), and is routinely applied to claims against corporate entities based on the conduct of their healthcare professional employees, as the foregoing cases illustrate. The Saliers attempt to reframe their claims as focused on supposed "corporate fiat and the absence of medical judgment and decision-making [that] was made to trump a physician's well-considered judgment." Aplt. Br. 28. But as detailed above, the Saliers have made no factual allegations suggesting Hy-Vee's alleged corporate policy was not based on appropriate medical considerations. Even if they had, such an allegation necessarily entails assessment of the alleged policy and the pharmacist's conduct in the

44

context of the applicable medical and pharmaceutical science, as well as the government and public health authority guidance discussed above.

The Saliers' attempts to recharacterize their claims to avoid the expert affidavit requirement are unavailing. Indeed, this is exactly the type of meritless case in which the statute is meant to apply, and to require early dismissal.

### C. The Saliers Failed to Show Excusable Neglect

The district court did not abuse its discretion in denying the Saliers' cursory oral motion for an extension of time to serve the required affidavit of expert review. To establish excusable neglect, "a plaintiff must have a reasonable case on the merits, the plaintiff must have a reasonable excuse, plaintiff must establish that he or she acted with due diligence, and plaintiff must demonstrate that no substantial prejudice will result to the other parties." *Flores v. United States*, No. 09-CV-838, 2009 U.S. Dist. LEXIS 133026, at *27 (D. Minn. Dec. 9, 2009) (citing *Maloney v. Fairview Community Hosp.*, 451 N.W.2d 237, 240 (Minn. Ct. App. 1990)).

Here, for all of the reasons the district court explained, the Saliers have not demonstrated excusable neglect. First, there is no reasonable case on the merits as explained above—all of the Saliers' claims fail as a matter of law. Second, there was no reasonable excuse. Third, the Saliers did not act with diligence.

Appellate Case: 22-2960     Page: 56     Date Filed: 02/08/2023 Entry ID: 5244009

The Saliers' counsel at the motion to dismiss hearing informed the court that despite fruitful conversations with an expert, that expert was too busy to sign an affidavit. Further, he could not even confirm the expert would actually agree the pharmacists "deviated from the applicable standard of care when they refused to fill [the] prescription[s]. App. 80-82; R. Doc. 35 at 33:2-35:5. And as the district court noted, at the pleading stage the statute requires an affidavit signed by the plaintiff's *attorney*, not by the expert him- or herself. Add. 20; R. Doc. 36, at 20 (citing Minn. Stat. § 145,682, subds. 2(1), 3). "If what counsel said at the hearing is true, then nothing has prevented him from drafting, signing, and serving the required affidavit." *Id.*

Accordingly, the district court did not abuse its discretion when it dismissed the Saliers' claims with prejudice for failure to comply with Minn. Stat. § 145.682.

## <u>CONCLUSION</u>

The Court should affirm the district court's judgment dismissing the Saliers' claims with prejudice.

46

Dated: February 8, 2022

Respectfully submitted,

DORSEY & WHITNEY LLP

By  */s/ Andrew Brantingham*
Stephen P. Lucke
lucke.steve@dorsey.com
Andrew Brantingham
brantingham.andrew@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

*Attorneys for Appellee Hy-Vee, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITS, TYPEFACE AND TYPE-STYLE REQUIREMENTS, AND VIRUS-SCAN

1.     This document complies with the 13,000 word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

This document contains 10,789 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

> This document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 version 16.0.4549.1000 in 14-point Century Schoolbook font.

3.     This document complies with 8th Cir. R. 28A(h)(2) because it has been scanned for viruses and is virus free.

DATED:  February 8, 2023

/s/ Andrew Brantingham
Steve Lucke
Andrew Brantingham
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 340-2600

*Attorneys for Defendant-Appellee*
*Hy-Vee, Inc.*

Appellate Case: 22-2960     Page: 59     Date Filed: 02/08/2023 Entry ID: 5244009

## CERTIFICATE OF SERVICE

I hereby certify that on the date below I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED:  February 8, 2023

/s/ Andrew Brantingham
Steve Lucke
Andrew Brantingham
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 340-2600

*Attorneys for Defendant-Appellee Hy-Vee, Inc.*

49

49

Appellate Case: 22-2960     Page: 60     Date Filed: 02/08/2023 Entry ID: 5244009